UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


BRANDON ASSOCIATES, LLC        )
     Plaintiff                 )
                               )
                               )       CIVIL ACTION
v.                             )
                               )       NO. 04 12013NMG
                               )
FAILSAFE AIR SAFETY SYSTEMS    )
CORP., BLUE SAGE CONSULTING,   )
INC., EICON MEDICAL,           )
DEBRA ESPE, ALAN FEUERSTEIN    )
     Defendants                )
                               )


         AMENDED VERIFIED COMPLAINT AND ACTION TO REACH AND APPLY


                              PARTIES

1. Plaintiff Brandon Associates, LLC ("Brandon") is a Massachusetts limited liability corporation with its principal place of business at 160 Commonwealth Avenue, Boston, MA 02116.

2. Defendant FailSafe Air Safety Systems Corp. ("FailSafe"), upon information and belief, is a Delaware corporation with its principal place of business at 79 Filmore Avenue, Tonawanda, NY 14150-2335.

3. Defendant Blue Sage Consulting, Inc. ("Blue Sage"), upon information and belief, is a Massachusetts corporation with its principal place of business at 6 Hearthstone Road, Hopkington, MA 01748.

4. Defendant Debra Espe ("Espe"), upon information and belief, is a United States citizen who resides at 4099 Burka Pkwy., Blasdell, NY 14219.

5. Defendant elCON Medical Consulting ("elCON"), upon information and belief, is a New York corporation with its principal place of business at 126 Devonshire Road, Buffalo, NY.

6. Defendant Alan Feuerstein ("Feuerstein"), upon information and belief, is a United States citizen whose principal place of business is Feuerstein & Smith, LLP, 17 Saint Louis Place, Buffalo, NY 14202.

JURISDICTION

7. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

STATEMENT OF FACTS

8. FailSafe is a leading innovator of mobile airborne hazard control technology and products which utilize a patented process that uniquely combines a high-volume blower, a high performance micro-fiberglass filter, ultraviolet light and ozone generation into one air safety system that captures, contains and neutralizes biohazards.

9. On May 1, 2003, Brandon and FailSafe entered into an Agreement for Professional Services, a copy of which is attached hereto as Exhibit A. Pursuant to the May 1, 2003 agreement, Brandon was to provide FailSafe with government lobbying services by facilitating contractual opportunities for FailSafe's technology with select state and federal agencies and by providing access to key federal agency officials and facilitating meetings.

10. On November 1, 2003, Brandon and FailSafe entered into a new Agreement for Professional Services, a copy of which is attached hereto as Exhibit B. Pursuant to the November 1, 2003 agreement, Brandon was to provide government lobbying services by facilitating contractual opportunities for FailSafe's technology with select state and federal agencies and by providing access to key federal agency officials and facilitating meetings.

11. The May 1, 2003 agreement required FailSafe to pay Brandon a monthly retainer of $18,500 for six (6) months.

12. The November 1, 2003 agreement required FailSafe to pay Brandon a monthly retainer of $18,000.

13. The November 1, 2003 agreement also required FailSafe to make additional payments of $10,000 to reduce the then outstanding balance owed to Brandon.

14. Both the May 1, 2003 and November 1, 2003 agreements required FailSafe to reimburse Brandon for reasonable expenses incurred in providing its services under the contract with the proviso that Brandon obtain FailSafe's pre-approval of any expenses exceeding two hundred fifty dollars ($250).

15. Brandon performed its express obligations under both agreements as outlined in the scope of services, including but not limited to: (a) introducing FailSafe and its products to high-level state and federal officials in the public safety and health and human services areas; (b) assisting FailSafe with its business strategy and sales efforts; and (c) helping FailSafe bid on and receive

2

government contracts.

16. Despite repeated demands for payment, FailSafe has failed and refused to make payments as agreed under the November 1, 2003 contract. The current balance owed to Brandon is $147,940.66.

17. Brandon terminated the November 1, 2003 agreement on May 31, 2004.

18. The account history reflects payments by FailSafe to Brandon of $98,444.60 and a balance of $147,940.66, as evidenced by Exhibit C attached hereto.

19. During the course of providing lobbying services for FailSafe, Brandon helped to secure a contract for FailSafe from the Massachusetts Department of Public Health (DPH), Center for Emergency Preparedness. A copy of FailSafe's May 27, 2004 Award Notice is attached as Exhibit G.

20. In its response to the DPH's Request for Response (RFR), FailSafe submitted a "Consultant Contractor Mandatory Submission Form" signed by CEO Paul Chirayath on March 4, 2004 "under the pains and penalties of perjury," which states "Debra Espe owns 100% of the company." A copy of this form is attached as Exhibit H.

21. At all relevant times to this dispute, FailSafe represented to Brandon that Defendant Espe had 100% ownership of FailSafe.

22. According to the April 2004 "FailSafe Air Safety Systems Corporation Investor Overview" ("Investor Overview"), a copy of which is attached as Exhibit D, ownership of FailSafe by the Defendants as delineated in the "Company Ownership" section is as follows: (a) Espe (81%); (b) elCON (5%); (c) Blue Sage (5%); and (d) Feuerstein (5%).

23. The Investor Overview also states in the "Board of Directors" section that the Board is comprised of: "Debra Espe, Founder; Paul J. Chirayath, CEO, Failsafe Air Safety Systems Corporation; Alan Feuerstein, Partner, Feuerstein & Smith, LLP; Eliot S. Lazar, MS, MD, President, elCON Medical Consulting" and three (3) empty seats.

24. FailSafe's Consultant Contractor Mandatory Submission Form filed with the DPH in March 2004 stating that Espe owns 100% of FailSafe contradicts with FailSafe's April 2004 Investor Overview's "Company Ownership" profile.

25. FailSafe also fraudulently states in the Investor Overview: (a) that its activities have been financed by "working capital supplied by advisory groups" including "Brandon Associates"; (b) that Brandon President & CEO Donald B. Flanagan is part of FailSafe's "Key Management" team; and (c) that Brandon is a member of FailSafe's "Active Advisory Group."

26. Brandon: (a) has not provided nor contracted to provide any financing or "working capital" for FailSafe; (b) Plaintiff's President and CEO Donald B. Flanagan has never served nor contracted to serve in a managerial or advisory capacity to FailSafe; and (c) Brandon is not and has never been a member of FailSafe's "Active Advisory Team"

27. FailSafe never alerted Brandon to the aforementioned representations in FailSafe's Investor Overview, and Brandon was not aware of the aforementioned representations until after Brandon had ended its contractual relationship with FailSafe.

COUNT I:

Breach of Contract

28. Brandon restates paragraphs 1-27 above and incorporates them herein as fully set forth.

29. Plaintiff and FailSafe entered into the fully enforceable agreements for professional services attached hereto as Exhibits A and B.

30. Plaintiff has fully performed all conditions necessary to recover under both agreements.

31. FailSafe has breached both the May 1, 2003 and November 1, 2003 contracts by failing and refusing to pay as agreed under either agreement.

32. As a result of the foregoing, Plaintiff has been damaged.

33. Wherefore, the Plaintiff, Brandon Associates, LLC demands payment of $147,940.60, plus interest, costs and reasonable attorneys' fees incurred in the collection of this sum.

COUNT II:

Libel

34. Plaintiff restates paragraphs 1-33 above and incorporates them herein as fully set forth.

35. Plaintiff arranged several meetings with diverse potential venture capital partners for FailSafe. Plaintiff, a lobbying firm, leveraged its professional reputation to secure meetings for FailSafe.

36. In April 2004, FailSafe prepared and published its "FailSafe Air Safety Systems Corporation Investor Overview" ("Investor Overview"), a copy of which is attached as Exhibit D.

4

37. FailSafe provided the Investor Overview to potential venture capital partners with whom Plaintiff had secured meetings.

38. In the Investor Overview, FailSafe published materially false information that is defamatory to Plaintiff and Plaintiff's President and CEO Donald B. Flanagan.

39. In the Investor Overview's section entitled "Initial Financing," FailSafe fraudulently states that its activities have been financed by "working capital supplied by advisory groups" including "Brandon Associates." In context, this statement suggests that Brandon was providing free services to FailSafe based on the optimistic forecasts for selling FailSafe's technology.

40. Brandon has neither provided nor contracted to provide any financing or "working capital" for FailSafe.

41. In the Investor Overview's section entitled "Key Management," FailSafe fraudulently identifies Donald B. Flanagan, President and CEO of Brandon Associates, LLC as part of FailSafe's "Key Management" team.

42. Plaintiff's President and CEO Donald B. Flanagan has never served nor contracted to serve in a managerial or advisory capacity to FailSafe.

43. In the Investor Overview section entitled "Active Advisory Group," FailSafe fraudulently includes Brandon as one of the Group's members.

44. Brandon is not and has not been associated with FailSafe on an "Active Advisory Group."

45. Brandon is a lobbying firm that relies heavily on its reputation to secure government access and lobbying services for its clients.

46. Brandon leveraged its reputation to secure meetings for FailSafe with the companies to whom FailSafe provided the fraudulent and defamatory Investor Overview.

47. Brandon does not know if FailSafe provided the Investor Overview to any other parties.

48. FailSafe's express representations regarding Brandon in the Investor Overview are materially misleading and false, and impugn the Plaintiff's professional integrity and honesty in the business community.

49. The damage done to the Plaintiff's professional reputation by FailSafe's materially false statements will likely result in loss of business by the Plaintiff.

50. Wherefore, the declaration set out a cause of action in tort for libel, Brandon respectfully requests that it be awarded damages for the harm to its reputation and that FailSafe be enjoined from further fraudulently using Plaintiff's name and Plaintiff's President and CEO Donald B. Flanagan's name.

COUNT III:

Fraud

51. Plaintiff restates and incorporates by reference paragraphs 1-50 above.

52. Plaintiff, a lobbying firm, leveraged its professional reputation to secure several meetings with diverse potential venture capital partners for FailSafe.

53. In its April 2004 Investor Overview, which FailSafe distributed to potential venture capital partners with whom Plaintiff had secured meetings, FailSafe published materially false information about Plaintiff.

54. Specifically, FailSafe fraudulently stated in the Investor Overview: (a) that its activities have been financed by "working capital supplied by advisory groups" including "Brandon Associates"; (b) that Brandon President & CEO Donald B. Flanagan is part of FailSafe's "Key Management" team; and (c) that Brandon is a member of FailSafe's "Active Advisory Group."

55. Brandon has neither provided nor contracted to provide any financing or "working capital" for FailSafe.

56. Plaintiff's President and CEO Donald B. Flanagan has never served nor contracted to serve in a managerial or advisory capacity to FailSafe.

57. Brandon is not a member of FailSafe's "Active Advisory Team"

58. Plaintiff is a lobbying firm that relies heavily on its reputation to secure government access and lobbying services for its clients.

59. Plaintiff leveraged its reputation to secure meetings for FailSafe with companies to whom FailSafe provided the Investor Overview.

60. Plaintiff leveraged its reputation to help FailSafe secure a government contract with the Massachusetts Department of Public Health (DPH) in which FailSafe filed a form entitled Consultant Contractor Mandatory Submission Form that states that Defendant Espe owns 100% of FailSafe.

61. According to FailSafe's Investor Overview, however, ownership of FailSafe is as follows: (a) Espe (81%); (b) elCON (5%); (c) Blue Sage (5%); and (d) Feuerstein (5%).

62. Plaintiff relied on FailSafe's materially false representations regarding the ownership of the company during the course of performing services on FailSafe's behalf and while assisting FailSafe with the filing of its response to the DPH's RFR.

63. The damage done to Plaintiff's professional reputation by FailSafe materially false statements has resulted in loss of business for Plaintiff.

64. Wherefore, the declaration set out a cause of action for the tort of fraud, Brandon respectfully requests that it be awarded damages for the harm to its professional reputation and the loss of business resulting from FailSafe's fraudulent behavior.

COUNT IV:

Misrepresentation

65. Plaintiff restates and incorporates by reference paragraphs 1-64 above.

66. Plaintiff knowingly and recklessly misrepresented in its Investor Overview that: (a) Brandon was providing "working capital" to FailSafe; (b) that Brandon's President & CEO was part of FailSafe's "Key Management" team; and (c) that Brandon was a member of FailSafe's "Active Advisory Group."

67. Brandon categorically denies that: (a) it ever provided "working capital" to FailSafe; (b) that Brandon's President & CEO was part of FailSafe's "Key Management" team; and (c) that Brandon was a member of FailSafe's "Active Advisory Group."

68. FailSafe knowingly represented to Brandon at all times that Defendant Espe owns 100% of FailSafe.

69. In March 2004, FailSafe knowingly represented to the Massachusetts Department of Public Health that Espe owns 100% of FailSafe (Exhibit H).

70. In April 2004, FailSafe knowingly represented to potential venture capital investors in its Investor Overview that ownership of the company was divided as follows: Espe owns 81%; elCON owns 5%; Blue Sage owns 5%; Feuerstein owns 5% (Exhibit D).

71. Plaintiff materially relied on FailSafe's misrepresentations of material fact to Plaintiff's detriment in the course of performing services outlined in the Agreements for Professional Services on

FailSafe's behalf.

72. Wherefore, the declaration set out a cause of action for the tort of misrepresentation, Brandon respectfully requests that it be awarded damages for the harm to its professional reputation and the loss of business resulting from FailSafe's misrepresentations.

COUNT V:

Violation of M.G.L. c. 214, §3A

73. Plaintiff restates paragraphs 1-72 above and incorporates them herein as fully set forth.

74. In April 2004, FailSafe prepared and published a booklet entitled "FailSafe Air Safety Systems Corporation Investor Overview" ("Investor Overview"), a copy of which is attached as Exhibit D.

75. FailSafe provided the Investor Overview to the potential venture capital partners for FailSafe.

76. Brandon does not know if FailSafe provided the Investor Overview to any other entities.

77. FailSafe published materially false information in the Investor Overview regarding the Plaintiff: (a) in the "Initial Financing" section, FailSafe fraudulently states that its activities have been financed by "working capital supplied by advisory groups" including "Brandon Associates"; (b) in the "Key Management" saction, FailSafe fraudulently identifies Donald B. Flanagan, President and CEO of Brandon Associates, LLC as part of FailSafe's "Key Management" team; and (c) in the "Active Advisory Group" section, FailSafe fraudulently includes Brandon as one of the Active Advisory Group's members.

78. Brandon has never provided nor contracted to provide any financing or "working capital" for FailSafe.

79. Plaintiff's President and CEO Donald B. Flanagan has never served nor contracted to serve in a managerial or advisory capacity to FailSafe.

80. Brandon has never agreed to act in any capacity in FailSafe's "Active Advisory Group."

81. FailSafe never alerted Brandon to the aforementioned representations and Brandon was not aware of the aforementioned representations until after Brandon had ended its contractual relationship with FailSafe.

82. Plaintiff is a lobbying firm that relies heavily on its

reputation to secure government access and lobbying services for its clients.

83. By FailSafe's intentional actions, FailSafe sought to take advantage and to benefit from Brandon and Brandon's CEO and President's good name and professional reputation and prestige.

84. FailSafe's express representations regarding Brandon in the Investor Overview are materially misleading and false, and impugn the Plaintiff's professional integrity and honesty in the business community, and have likely resulted in loss of business by the Plaintiff.

85. Wherefore, Brandon respectfully requests that it be awarded damages for FailSafe's actions.

COUNT VI:

Unfair and Deceptive Acts or Practices; M.G.L. c. 93A, §11

86. Plaintiff restates and incorporates by reference its allegations in paragraphs 1-85 above.

87. Plaintiff Brandon is a "person" and engages in "trade or commerce" within the meaning of G.L. c. 93A, § 1.

88. Defendant FailSafe is a "person" and engages in "trade or commerce" within the meaning of G.L. c. 93A, § 1.

89. At all relevant times, FailSafe has been engaged in the conduct of trade and commerce in the Commonwealth of Massachusetts.

90. FailSafe's Investor Overview, attached hereto as Exhibit D, which FailSafe provided to the potential venture capital partners with whom Plaintiff had secured meetings, contained the following materially false information, including: (a) that FailSafe's activities have been financed by "working capital supplied by advisory groups" including "Brandon Associates"; (b) that Donald B. Flanagan, President and CEO of Brandon Associates, LLC is part of FailSafe's "Key Management" personnel; and (c) that Brandon is part of FailSafe's "Active Advisory Group."

91. Neither Brandon nor its President and CEO are in any way supporting, financing or acting as "Key Management" for FailSafe.

92. By its conduct as set forth above, FailSafe has willfully and knowingly engaged in unfair methods of competition and unfair and deceptive acts and practices in violation of G.L. c. 93A.

93. Wherefore, Brandon respectfully requests that it be awarded damages for the harm suffered by Brandon and damages for which FailSafe is liable.

9

COUNT VII:

Reach and Apply

94. Plaintiff restates paragraphs 1-93 above and incorporates them herein as fully set forth.

95. Pursuant to G.L. c. 214, §3, Plaintiff seeks to reach and apply the FailSafe's ownership and/or exclusive rights to U.S. Patent No. 6,162,118 and to U.S. Patent Application No. 10/434,041.

96. Upon information and belief, Theodore A. M. Arts, a citizen of Canada residing at 312 Countryside Lane, Williamsville, New York 14221, has ownership of U.S. Patent No. 6,162,118 and to U.S. Patent Application No. 10/434,041, copies of which are attached hereto as Exhibit E.

97. Upon information and belief, FailSafe received exclusive rights to U.S. Patent No. 6,162,118 through a licensing agreement with Theodore A. M. Arts, a citizen of Canada residing at 312 Countryside Lane, Williamsville, New York 14221, a copy of which is attached hereto as Exhibit F.

98. Plaintiff will likely recover a judgment against FailSafe of at least $147,940.60, plus interest, costs and attorney fees.

99. Wherefore, Brandon prays this Court afford the following relief: (1) a preliminary injunction restraining FailSafe from assigning, selling or otherwise transferring to any party any and all of FailSafe's ownership and/or licensing rights to U.S. Patent No. 6,162,118 and to U.S. Patent Application No. 10/434,041; (2) a permanent injunction requiring same; and (3) a judgment permitting Brandon to reach and apply sums payable to FailSafe from the licensing agreements in the amount of $147,940.60 plus any such further sums as this Court deems just and equitable.

REQUESTS FOR RELIEF

WHEREFORE, Brandon requests that this Court:

1. Enter judgment for Brandon on all Counts of its Verified Complaint;

2. Award Brandon monies owed by FailSafe for breach of contract, including $147,940.60 plus interest, costs and reasonable attorneys' fees incurred in the collection of same;

3. Grant Brandon preliminary injunctive relief that:
    a. precludes FailSafe from assigning, selling or otherwise transferring to any party any and all ownership and/or

10

   licensing rights to U.S. Patent No. 6,162,118 and to U.S.
   Patent Application No. 10/434,041;
  b. permits Brandon to reach and apply sums payable to FailSafe
   from the licensing agreement including the amount of
   $147,940.60 and any such further sums as this Court deems
   just and equitable;

4. Grant Brandon a permanent injunction that:
  c. precludes FailSafe from assigning, selling or otherwise
   transferring to any party any and all ownership and/or
   licensing rights to U.S. Patent No. 6,162,118 and to U.S.
   Patent Application No. 10/434,041;
  d. permits Brandon to reach and apply sums payable to FailSafe
   arising from FailSafe's ownership or licensing rights to
   U.S. Patent No. 6,162,118 and to U.S. Patent Application
   No. 10/434,041, including the amount of $147,940.60 and any
   such further sums as this Court deems just and equitable;

5. Grant Brandon a permanent injunction enjoining FailSafe from fraudulently using Plaintiff's name and Plaintiff's President and CEO Donald B. Flanagan's name in any of its literature, representations or publications;

6. Award Brandon damages for the harm FailSafe caused to Plaintiff's reputation because of FailSafe's actions in libel;

7. Award Brandon damages for the harm FailSafe caused to Brandon and Brandon's reputation due to FailSafe's fraud;

8. Award Brandon damages for the harm FailSafe caused to Brandon and Brandon's reputation due to FailSafe's material misrepresentations;

9. Award Brandon multiple damages and attorney fees on account of FailSafe's willful violation of G.L. c. 93A;

10. Grant Brandon any such other relief as the Court deems just and equitable.

           Brandon Associates, LLC
           By its Attorney,

           */s/ Stacy J. Silveira*

           Stacy J. Silveira, Esq.
           BBO No. 650675
           General Counsel
           Brandon Associates, LLC
           160 Commonwealth Avenue
           Boston, MA  02116
Dated: September 23, 2004    (617) 695-8949

VERIFICATION

    I, Donald B. Flanagan, President and CEO of Brandon Associates, LLC, 160 Commonwealth Avenue, Boston, MA, 02116, do hereby depose and state that I have read the foregoing Verified Complaint and Action to Reach and Apply and that the allegations set forth therein are true and correct, except for the allegations made upon information and belief, which allegations I believe to be true.

    Signed under the penalties of perjury.

_____
Donald B. Flanagan
President and CEO
Brandon Associates, LLC
160 Commonwealth Avenue
Boston, MA  02116

Dated: September 23, 2004

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by United States Mail or hand delivery, this 23rd day of September, 2004 to the following:

FailSafe Air Safety Systems Corp., to its attorneys:
Kenneth A. Sweder, Esq.
Laurie M. Ruskin, Esq.
Sweder & Ross LLP
21 Custom House Street, Suite 300
Boston, MA  02110

Pamela Campagna
President
Blue Sage Consulting, Inc.
6 Hearthstone Road
Hopkington, MA  01748.

Debra Espe
4099 Burka Pkwy.
Blasdell, NY 14219.

Eliot S. Lazar, MS, MD,
President
elCON Medical Consulting
126 Devonshire Road
Buffalo, NY

Alan Feuerstein, Esq.
Principal
Feuerstein & Smith, LLP
17 Saint Louis Place
Buffalo, NY 14202.

_____
Stacy J. Silveira, Esq.
General Counsel
Brandon Associates, LLC
160 Commonwealth Avenue
Boston, MA  02116
BBO # 650675

13