FILED
IN CLERK'S OFFICE

2004 OCT 18  P 2: 50

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRANDON ASSOCIATES, LLC )
    Plaintiff )
)
v. )
)
FAILSAFE AIR SAFETY SYSTEMS )
CORP., BLUE SAGE CONSULTING, )
INC., ELCON MEDICAL, )
DEBRA ESPE, ALAN FEUERSTEIN )
    Defendants )

CIVIL ACTION

NO. 04 12013NMG

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE AND FOR SANCTIONS

The Plaintiff, Brandon Associates, LLC ("Brandon"), respectfully requests that this Court deny the Motion to Strike and for Sanctions filed by the Defendant FailSafe Air Safety Systems Corp. ("FailSafe") on October 5, 2004.[1]

I. **This Court Should Deny The Defendant's Motion To Strike And For Sanctions Because Defense Counsel Failed To Comply With The Safe Harbor Provision of FED. R. CIV. P. 11.**

This Court should deny FailSafe's Motion to Strike and for Sanctions because defense counsel did not comply with the safe harbor provision of FED. R. CIV. P. 11. The safe harbor provision requires a party seeking sanctions to serve a copy of the motion on the opposing party at least twenty-one days before filing it with the Court. *See* FED. R. CIV. P. 11 (a motion for sanctions "shall be served as provided in Rule 5, but shall not be filed with

---

[1] All references in this memorandum are as follows: to Exhibits attached to this motion as (Ex.___); to the Motion to Strike and for Sanctions as (M.S.S. ___); to the Amended Verified Complaint and Action to Reach and Apply as (C.___); and to the Exhibits attached to the Amended Verified Complaint and Action to Reach and Apply as (C. Ex.___).

or presented to the court unless, within 21 days after service of the motion ... the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected). FailSafe's counsel served the Motion to Strike and for Sanctions on Brandon on October 5, 2004, the same day opposing counsel filed the motion with this Court. Thus, opposing counsel failed to give Plaintiff the twenty-one day notice required under Rule 11 to withdraw or cure any allegedly offending documents. *See Smith v. Robertshaw Controls Co.*, 2004 WL 1260097 (June 7, 2004) (D.Mass.) (defendant's motion for Rule 11 sanctions "ought to be denied because it did not comply with the safe harbor provision of Rule 11"). Likewise, FailSafe's counsel failed to provide any notice to Brandon regarding the Rule 11 motion prior to its being filed. *See Monahan Corporation N.V. v. Whitty*, 319 F.Supp.2d 227, 232-235 (D.Mass. 2004) ("counsel should be expected to give informal notice to the other party, whether in person or by telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion"). Therefore, the Defendant's Motion To Strike and For Sanctions should be denied based on opposing counsel's utter failure to comply with clear requirements of Rule 11.

II.   <u>The Defendant's Motion to Strike And For Sanctions Fails On The Merits Because: (1) Any Clerical Errors Made By Plaintiff's Counsel Do Not Warrant Sanctions; (2) FailSafe Is Functionally A Close Corporation And There is Sufficient Factual Evidence In The Amended Complaint Linking Members of FailSafe's Board Of Directors To The Fraudulent Actions Of FailSafe; and (3) Blue Sage Was Properly Added As A Defendant Because Its Principal Is Also An Employee Of FailSafe, A Shareholder, And Author Of The Fraudulent Investor Overview.</u>

Brandon filed its original Verified Complaint and Action to Reach and Apply against FailSafe on September 8, 2004 in the Superior Court of the Commonwealth of Massachusetts. Brandon properly served the Summons and the Verified Complaint and

Action to Reach and Apply upon the FailSafe's President Paul Chirayath via U.S. Express Mail (which requires a signature upon receipt) pursuant to MASS. R. CIV. P. 4(e):

> When any statute or law of the commonwealth authorizes service of process outside the Commonwealth, the service shall be made by delivering a copy of the summons and of the complaint: ... (3) by any form of mail addressed to the person to be served and requiring a signed receipt.

Service by U.S. Express Mail was also proper pursuant to the terms of the May 1, 2003 and November 1, 2003 contracts in which Brandon and FailSafe "agree the Commonwealth of Massachusetts is a reasonable and convenient forum for the resolution of disputes, and each consents to the exclusive personal jurisdiction of such courts, and service of process by certified mail or national overnight carrier" (C. Ex. A, B). On September 10, 2004, FailSafe received the Summons and Complaint. On September 17, 2004, FailSafe removed the case to this Court on grounds of diversity jurisdiction. On October 6, 2004, Plaintiff filed proof of service of the Summons and Complaint with this Court.

Pursuant to FED. R. CIV. P. 15(a), Brandon amended its complaint as a matter of course on September 24, 2004. Brandon complied with FED. R. CIV. P. 15(a) by filing its Amended Complaint only sixteen days after filing the original complaint and prior to the filing of FailSafe's Answer. As FailSafe admits, "It should be noted that Plaintiff filed its motion to amend the Complaint prior to being served with Failsafe's [sic] Answer" (M.S.S. n.2). Opposing counsel disingenuously asserts that Brandon did not avail itself of Rule 15(a) because Brandon filed its Amended Complaint with a "Motion to Amend the Verified Complaint and Action to Reach and Apply" (M.S.S. n.2). Brandon's Motion to Amend, however, clearly and succinctly stated that Brandon was filing the Amended Complaint "[p]ursuant to Rule 15(a) of the Federal Rules of Civil Procedure" and

3

included the original date of filing to illustrate that Brandon was well within Rule 15's twenty day time frame (Ex. D).

Brandon properly served the Amended Complaint upon each Defendant either by U.S. Express Mail or by hand. Pursuant to FED. R. CIV. P. 4(e)(1), service may be made "pursuant to the law of the state in which the district court is located." According to FED. R. CIV. P. 4(n)(1), service upon domestic corporations "shall be effected: (1) in a judicial district of the United States in a manner prescribed for individuals by subdivision (e)(1)." In the instant case, the law of Massachusetts permits service of process by "by any form of mail addressed to the person to be served and requiring a signed receipt." MASS. R. CIV. P. 4(e).[2] Therefore, Defendants Feuerstein, Espe, and elCON Medical, all of whom were served via U.S. Express Mail, were properly served.

The Defendant FailSafe falsely claims that, "the Plaintiff *never* served FailSafe with either its Motion to Amend or its Amended Complaint" (M.S.S. p.2). Brandon filed its Motion to Amend and Amended Complaint on Friday, September 24th. Because Plaintiff's counsel was unable to bring the appropriate documents to the Suffolk County Sheriff's Office by 5:00 p.m. that day, Plaintiff's counsel personally brought the above referenced documents with the appropriate payment to the Suffolk County Sheriff's Office the following business day, which was Monday, September 27, 2004. (The Suffolk County Sheriff's Office is closed on Saturdays and Sundays.) A copy of the cover letter with the Sheriff's Office's date stamp of September 27, 2004 is attached as

---

[2] On October 16, 2004, as a precaution, Brandon commenced service of the Summons and Amended Complaint on Defendants Feuerstein, Espe and elCON by sending via U.S. Express Mail the requisite number of copies of the documents and fees to the Erie County Sheriff's Office in Buffalo, NY. Because opposing Counsel now claims to represent the aforementioned defendants, Brandon will also serve additional copies of the Summons and Amended Complaint on opposing counsel via the Suffolk County Sheriff's Office.

Exhibit A. The Suffolk County Sheriff's Office indicated to Plaintiff's counsel that they served opposing counsel on October 6, 2004. Any failure by the Sheriff's Office to promptly serve FailSafe's counsel was purely an administrative failure by the Sheriff's Office and should not be held against the Plaintiff.

Opposing counsel also claims that Rule 11 sanctions are necessary because Brandon's Counsel made "false representations to the Court" with respect to the dates listed in the Certificate of Service for its Motion to Amend, Amended Complaint and Motion for Pro Hac Vice Appearance (M.S.S. 2-3). Counsel for Brandon made a clerical error with respect to the date of September 23, 2004 placed in the Certificates of Service. All three documents were filed with this Court on Friday, September 24th and either brought to the Sheriff's Office or placed in the U.S. mail the next business day, which was Monday, September 27, 2004. For purpose of a Rule 11 motion, it is important to note that Brandon's Counsel is the sole attorney in a government affairs firm with no legal administrative help, and splits her job duties between legal work as General Counsel (20%) and client work as Director of State Affairs (80%). *See Robinson v. Dean Witter Reynolds, Inc.*, 129 FRD 15, 22 (D.Mass. 1989).

Interestingly, FailSafe's counsel has made an identical error to the one she now claims should subject Brandon's counsel to sanctions. On her Certificate of Service for her Motion to Strike and for Sanctions, opposing counsel represents that she "caused a true copy of the above document to be served upon the attorney of record for each of the other parties in this action by hand or U.S. mail, this 4[th] day of October, 2004" (Ex. B). In fact, opposing counsel served Brandon on October 5, 2004, the same date indicated on opposing counsel's cover sheet for the filing of the Motion. Similarly, opposing

5

counsel's letter to Brandon regarding the Rule 11 motion was also mailed on October 5, 2004 (Ex. C). Opposing counsel's misrepresentation to this Court regarding service of her Motion is even more egregious than Brandon's due to her many years of experience as an attorney and the fact that she has filed for sanctions against another attorney for the identical issue.

Finally, Defendant Feuerstein claims that he: (1) received the Motion to Amend and the Amended Complaint, but did not receive the attached Exhibits; and (2) received the Summons for another of the proposed Defendants (M.S.S. 2-3).[3] Plaintiff's Counsel respectfully suggests that it is highly unlikely that the Exhibits, which comprise the bulk of the documents, were not included in the materials served upon Defendant Feuerstein. Plaintiff's counsel personally copied each Motion to Amend and Amended Complaint, including all Exhibits, and enclosed each document with its Summons in the appropriate mailing envelope. Defendant Feuerstein's claim is particularly specious considering that he is alleging that fifty-one pages (e.g., the alleged "missing" exhibits) of sixty-five pages were missing.

The defendant's motion should also fail because the case at bar is particularly complex, involving what appears to be a shell corporation, straw shareholders, and patent rights. As this Court has noted, "[t]here is a consensus that the whole area of limited liability, and conversely of piercing the corporate veil, is among the most confusing in corporate law." *The George Hyman Constr. Co. v. Gatemen*, 16 F.Supp.2d 129, 150-51 (1998), *quoting Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 21-22 (1st Cir. 1998).

6

Initially, it is important to note that Massachusetts law applies in the case at bar. In diversity jurisdiction cases, federal courts apply the choice of law rules of the state in which they sit. *See Callahan v. Dykeman Electric Co.*, 266 F.Supp.2d 208, 230 (2003). "The place of incorporation is only one of several factors that Massachusetts courts consider in deciding what law to apply to piercing the corporate veil involving a contractual dispute." *Id., citing Evans v. Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 574 N.E.2d 395, 400 (1991) (piercing corporate veil issue and relying on Restatement (Second) of Conflict of Laws § 188 (1971), wherein the place of incorporation is only one of several factors to determine applicable law). Moreover, as the Massachusetts Supreme Judicial Court has stated, "the law that governs corporate acts with respect to third persons and the law that governs the corporation's relationship to its shareholders." *Harrison v. Netcentric Corp.*, 433 Mass. 465, 472 n.10, *citing Restatement (Second) of Conflicts of Law*, § 302 (1971) ("There is no reason why corporate acts [such as the making of contracts] should not be governed by the local law of the different states"). Thus, even though FailSafe was incorporated in Delaware, the law of Massachusetts applies because the issues presented are not "internal" matters. *See Netcentric*, 433 Mass. at 469-72.

The Amended Complaint properly added four new defendants - Debra Espe, Alan Feuerstein, elCON Medical Consulting, and Blue Sage Consulting - all of whom are listed in FailSafe's Investor Overview as shareholders and/or members of the Board of Directors. In a functionally close corporation, where the shareholders live near each other and exercise a great deal of control over the daily operations of the corporation, it is

---

[3] In addition to FailSafe, opposing counsel now claims to represent three of the defendants added in the Amended Complaint – Debra Espe, ex-wife to FailSafe CEO Paul Chirayath, Alan Feuerstein, and Eliot

7

assumed that they are familiar with the daily operations and business of the corporation. "Caselaw and precedent elsewhere draw distinctions between close and public corporations, and the cases where courts have allowed creditors to reach assets have almost always involved close corporations." *Birbara v. Locke*, 99 F.3d 1233, 1237-38 (1st Cir. 1996); Easterbrook & Fischel, *The Economic Structure of Corporate Law* 55-56 & N.8 (1991) (explaining that a "manager's incentive to undertake overly risky projects is greater in close corporations"). Indeed, "[t]he key Massachusetts cases on piercing the corporate veil have all involved close, family-owned defendant corporations." *Birbara*, 99 F.3d at 1238. Upon information and belief, FailSafe did not elect to be a close corporation under Delaware law. Nevertheless, FailSafe is functionally a close corporation in that the majority shareholder is Debra Espe, the wife or ex-wife of Mr. Chirayath, FailSafe's President. According to the Investor Overview, Ms. Espe is the Founder of FailSafe and sits on the Board of Directors (C. Ex. D). Likewise, two other members of the Board of Directors – Defendants Feuerstein and Eliot S. Lazar, President of elCON Medical - are also actively involved in running the company. Thus, the defendants all likely knew about the Investor Overview and any actions taken in the company's name. Where, as here, the Amended Complaint alleges factual support sufficient to support a reasoned inference that most of the relevant evidence is uniquely within the control of the defendants, further discovery is essential. *See New England Data, Inc.*, 829 F.2d 286 (1987).

"The legal standard for when it is proper to pierce the corporate veil is notably imprecise and fact-intensive." *Crane*, 134 F.3d at 21. In general, "shareholders may be held liable where they control the operation of the corporation and run it for their

---

Lazar - all of whom live and work in the Buffalo, NY area.

personal benefit, and where justice requires that the separate existence of the corporation be ignored." *Pepsi-Cola Metro. Bottling Co., Inc., v. Checkers, Inc.*, 754 F.2d 10, 16 (1985). In Massachusetts, the corporate veil may be pierced where: "(1) there is active and pervasive control of related business entities by the same controlling persons *and* there is a fraudulent or injurious consequence by reason of the relationship among those business entities; or (2) there is "a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." *Evans*, 30 *Mass. App. Ct. at 732, quoting My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968). As the First Circuit stated in *Pepsi-Cola*, a determination to disregard the corporate form must be based on the following twelve factors: (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud. *See Pepsi-Cola*, 754 F.2d at 16. These factor cut in favor of piercing the corporate veil in the case at bar.

"Where the principal shareholders of a close corporation fail to observe with care the corporation's existence, a court will not later heed their requests to do so." *Pepsi-Cola*, 754 F.2d at 16. Such is the case here. With regard to common ownership, the

9

majority owner of FailSafe is Debra Espe, who is the wife or the ex-wife of Mr. Chirayath, President of FailSafe. Mr. Chirayath has represented that Ms. Espe owns either 100% of FailSafe (C. Ex. H) or 81% of FailSafe (C. Ex. D). It thus appears that Ms. Espe is a straw for Mr. Chirayath. Likewise, pervasive control is also present in this case. At all times pertinent to this dispute, both financially and operationally, Mr. Chirayath and Ms. Espe, in conjunction with Defendants Feuerstein, elCON Medical's Eliot Lazar and Blue Sage's Pamela Campagna were the "controlling persons" and "key management" for FailSafe. It also appears that at least Ms. Espe, who was not involved with any of FailSafe's business, was a nonfunctioning officer or director. Further discovery is necessary to determine whether Defendants Feuerstein and ElCON Medical's Lazar were functioning in a proper capacity. For example, Feuerstein's role as FailSafe shareholder, corporate counsel and Member of the Board of Directors potentially presents a conflict of interest. *See New York Code of Professional Responsibility*, EC 5-18 ("A lawyer for a corporation or other organization who is asked to become a member of its board of directors should determine whether the responsibilities of the two roles may conflict.... If there is a material risk that the dual role will compromise the lawyer's independent professional judgment on behalf of the corporation, the lawyer should not serve as a director"); *Restatement of the Law Governing Lawyers, §131, Conflicts of Interest in Representing an Organization* ("...a lawyer may not represent both an organization and a director, officer, employee, shareholder, owner, partner, member, or other individual or organization associated with the organization if there is a substantial risk that the lawyer's representation of either would be materially and adversely affected by the lawyers duties to the other").

10

Further discovery is also necessary to determine if these shareholders used the corporations for transactions. Clearly, however, Brandon has a legitimate belief that the nonobservance of corporate formalities occurred with FailSafe. FailSafe's president, Mr. Chirayath, informed Brandon's President Donald B. Flanagan that FailSafe's Board of Directors was "informal." Ms. Campagna informed Mr. Flanagan that her shares in FailSafe had never been issued. Moreover, the Investor Overview (C. Ex. D) does not list as a shareholder Therasyn Pharmaceuticals, Inc. ("Therasyn"), a Delaware corporation whose President is Jerome J. Schentag and whose principal place of business at 100 Crosby Boulevard, Amherst, NY 14226. Upon information and belief, FailSafe and Therasyn executed a Stock Purchase Agreement on or about May 5, 2003, and two Amendments to the Stock Purchase Agreement (dated September 12, 2003 and October 31, 2003, respectively). Therefore, based on the aforementioned omissions, discovery is necessary to determine whether FailSafe observed corporate formalities (i.e., shareholder meetings, directors' meetings, voting, corporate record keeping, etc.). The absence of corporate records is also likely. As Mr. Chirayath represented to Brandon that FailSafe's Board was "informal," Brandon has reason to believe that no corporate records, including minutes of meetings of the Board of Directors, have been kept. Only further discovery will be able to answer these questions.

Moreover, FailSafe was thinly capitalized. The legal touchstone for adequacy of capital in a veil-piercing case is whether the corporate entity was designed for financial failure. Focusing on the initial capitalization, the answer turns on whether the capital was "too thin" to do the job necessary. *See Evans*, 30 Mass. App. Ct. at 734. At the outset of the parties contractual relationship, Mr. Chirayath represented to Brandon that he would

11

be able to pay the fees he owed Brandon from monies owed him through a Florida issued bond that was already due. As he repeatedly failed to make payments to Brandon, Mr. Chirayath consistently offered excuses why the bond money had not arrived, including a statement that the funds were held up in Germany. Similarly, at all times relevant to the contested transactions between the parties, FailSafe has been insolvent. *See Evans*, 30 Mass. App. Ct. at 735 (referring to the "years in question" in deciding whether a corporation was insolvent). The test for insolvency is whether a corporation is able to pay its debts as they become due. *See Birbara*, 99 F.3d at 1241 (defining insolvency as "unable to pay its debts as they fell due"). Brandon is a creditor of FailSafe. This action arose because FailSafe has not paid it's debt of $147,940.60 to Brandon. From the beginning of its contractual relationship with Brandon, FailSafe failed to pay its bills promptly.

The corporate veil should also be pierced because FailSafe appears to be a vehicle for promoting fraud. In this context, fraud may be found if a corporation "was established or operated so as to misrepresent or divert assets." *See Evans*, 30 Mass. App. Ct. at 736. For example, the Investor Overview (C. Ex. D), does not list as a shareholder Therasyn Pharmaceuticals, Inc. ("Therasyn"), a Delaware corporation with Jerome J. Schentag as President and with its principal place of business at 100 Crosby Boulevard, Amherst, NY 14226. Upon information and belief, FailSafe executed a Stock Purchase Agreement on or about May 5, 2003, and two Amendments to the Stock Purchase Agreement (dated September 12, 2003 and October 31, 2003, respectively). Mr. Schentag, an employee of FailSafe, is also the Chief Executive Officer of CPL Associates, LLC ("CPL"), 3980 Sheridan Drive, Suite 501, Amherst, NY 14226 (Ex. E).

According to its website (www.cplassociates.com), CPL Associates claims to provide "a full range of clinical research and development services to the pharmaceutical industry." Upon information and belief, CPL is the parent company of Safe-Air Systems ("Safe-Air"), another company of which Mr. Chirayath is President. Safe-Air's website (www.safe-air.us) states that: (1) it is a division of CPL (Ex. F); (2) that Safe-Air was "formed in 2002" and has rights to the patents in question (Ex. G); and (3) that Safe-Air distributes products manufactured by FailSafe (Ex. H). In fact, the Safe-Air website shows videos of Mr. Chirayath explaining how to use the FailSafe product and relies on promotional literature with the FailSafe logo. The only address listed on the website for Safe-Air is "CPL Associates, LLC, 3980 Sheridan Drive, Suite 501, Amherst, NY 14226," and the Safe-Air's fax number [(716) 839-5138] is the same fax number provided for CPL Associates (Ex. H, E). *See In re Plantation Realty Trust*, 232 B.R. 279, 282-83 (1999) ("piercing the corporate veil is appropriate where an individual with pervasive control of multiple entities creates an atmosphere of confusion relative to the assets and activity of each, to the detriment of a third party dealing with what appears to be a single enterprise").

Upon information and belief, Mr. Chirayath also co-founded Network Security Corporation (NSEC), located at 405 North French Road, Suite 100, Amherst, NY 14228 (www.networksecuritycorp.com) or at 369 River Road, North Tonawanda, NY 14120. Founded in 1997 to provide "customized information security solutions required to support regulatory and business needs," NSEC also has office locations in Raleigh, NC (Research Triangle Park) and at NSEC Network Security AB, Box 241, 177 24 Jarfalla, Sweeden. Mr. Chirayath claims to have run NSEC in a variety of capacities, including as

President, Vice-President, Chief Operating Officer and Chief Executive Officer. Mr. Chirayath also appears to be related in some way to the management and/or ownership of Anchor Software, LLC, which is a division of Anchor Computer Software. Thus, in the case at bar, discovery is necessary to determine the extent of FailSafe's relationship with the other defendants and their respective relationships with the aforementioned companies. *See also In re MacDonald*, 114 B.R. 326, 332-33 (corporate veil pierced to establish debtor as equitable owner of corporate stock); *In re Landbank Equity Corp.*, 83 B.R. 362 (E.D.Va. 1987) (corporate veil pierced in order to reach assets transferred to debtor's family members); *In re Charnock*, 97 B.R. 619 (Bankr.M.D.Fla. 1989) (debtor, who held no stock himself, was alter ego of corporations legally owned by family members).

Finally, FailSafe's counsel claims that "it must be concluded that the only reason [Blue Sage] is included here is to introduce a Massachusetts defendant which would defeat diversity which allowed this action to be removed to this Court" (M.S.S. p.5). This claim is false. Opposing counsel fails to acknowledge that Ms. Campagna, Principal of Blue Sage, is also the Director of Marketing and Channel Relations for FailSafe, as her business card (Ex. I) and resume (submitted for FailSafe's RFP to the Massachusetts Department of Public Health) (Ex. J) clearly indicate. In fact, Ms. Campagna operates FailSafe's Massachusetts office in Hopkinton, MA. Moreover, Ms. Campagna was responsible for writing the Investor Overview and distributing it to a third party, Mr. Steve Peltzman, who was in discussions with Mr. Chirayath regarding potential venture capital opportunities for FailSafe.[4] Finally, as the Amended Complaint illustrates,

---

[4] Mr. Peltzman is in not an employee, owner or partner of Brandon; indeed, Mr. Peltzman has never done any business with Brandon or Brandon's President Donald B. Flanagan. Upon Mr. Chirayath's

14

Plaintiff's counsel amended the jurisdiction claim to diversity jurisdiction to remain, if possible, in federal court.

For these reasons, the Plaintiff Brandon Associates, LLC respectfully requests that this Court deny the Defendant's Motion to Strike the Amended Complaint and for Sanctions.

Respectfully Submitted,

For Brandon Associates, LLC
By its Attorney

*/s/ Stacy J. Silveira*
Stacy J. Silveira, Esq.
BBO # 650675
General Counsel
Brandon Associates, LLC
160 Commonwealth Avenue
Boston, MA 02116
(617) 695-8949

October 18, 2004

CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served upon the attorney of record for each of the other parties in this action by placing the document in the U.S. mail, this 18th day of October, 2004.

*/s/ Stacy J. Silveira*
Stacy J. Silveira, Esq.

---

request that Brandon find venture capital funding for FailSafe, Brandon located Mr. Peltzman as a potential partner for FailSafe. The extent of Brandon's involvement with Mr. Peltzman was to set up meetings between Mr. Chirayath and Mr. Peltzman.