UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
BRANDON ASSOCIATES, LLC,      )
     Plaintiff,               )
                              )
v.                            )   CIVIL ACTION
                              )
                              )   NO. 04 12013NMG
FAILSAFE AIR SAFETY SYSTEMS   )
CORP.,                        )
     Defendants.              )
                              )
```

## SECOND AMENDED VERIFIED COMPLAINT AND ACTION TO REACH AND APPLY

### Parties

1. Plaintiff Brandon Associates, LLC ("Brandon") is a Massachusetts limited liability company with its principal place of business at 160 Commonwealth Avenue, Boston, MA 02116.

2. Defendant FailSafe Air Safety Systems Corp. ("FailSafe") is a Delaware corporation with its principal place of business at 79 Filmore Avenue, Tonawanda, NY 14150-2335.

### JURISDICTION

3. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

### STATEMENT OF FACTS

4. FailSafe is an innovator of mobile airborne hazard control technology and products which utilize a patented process that uniquely combines a high-volume blower, a high performance micro-fiberglass filter, ultraviolet light and ozone generation into one air safety system that captures, contains and neutralizes biohazards.

5. On May 1, 2003, Brandon and FailSafe entered into an Agreement for Professional Services, a copy of which is attached hereto as Exhibit A. Pursuant to the May 1, 2003 agreement, Brandon was to provide FailSafe with government lobbying services by facilitating contractual opportunities for FailSafe's technology with select state and federal agencies and by providing access to key federal agency officials and facilitating meetings.

6. On November 1, 2003, the parties entered into a new Agreement for Professional Services, a copy of which is attached hereto as Exhibit B. Pursuant to the November 1, 2003 agreement, Brandon was to provide government lobbying services by facilitating

contractual opportunities for FailSafe's technology with select state and federal agencies and by providing access to key federal agency officials and facilitating meetings.

7. The May 1, 2003 agreement required FailSafe to pay Brandon a monthly retainer of $18,500 for six (6) months.

8. The November 1, 2003 agreement required FailSafe to pay Brandon a monthly retainer of $18,000.

9. The November 1, 2003 agreement also required FailSafe to make additional payments of $10,000 to reduce the then outstanding balance owed to Brandon.

10. Both the May 1, 2003 and November 1, 2003 agreements required FailSafe to reimburse Brandon for reasonable expenses incurred in providing its services under the contract with the proviso that Brandon obtain FailSafe's pre-approval of any expenses exceeding two hundred fifty dollars ($250).

11. Brandon performed its express obligations under both agreements as outlined in the scope of services, including but not limited to: (a) introducing FailSafe and its products to high-level state and federal officials in the public safety and health and human services areas; (b) assisting FailSafe with its business strategy and sales efforts; and (c) helping FailSafe bid on and receive government contracts.

12. During the course of providing lobbying services for FailSafe, Brandon helped to secure a contract for FailSafe from the Massachusetts Department of Public Health (DPH), Center for Emergency Preparedness.

13. Despite repeated demands for payment, FailSafe has failed and refused to make payments as agreed under the November 1, 2003 contract. The current balance owed to Brandon is $147,940.66.

14. Brandon terminated the November 1, 2003 agreement on May 31, 2004.

15. The account history reflects payments by FailSafe to Brandon of $98,444.60 and a balance of $147,940.66, as evidenced by Exhibit C attached hereto.

COUNT I:

Breach of Contract

16. Brandon restates paragraphs 1-15 above and incorporates them herein as fully set forth.

17. Plaintiff and FailSafe entered into the fully enforceable agreements for professional services attached hereto as Exhibits

2

A and B.

18. Plaintiff has fully performed all conditions necessary to recover under both agreements.

19. FailSafe has breached both the May 1, 2003 and November 1, 2003 contracts by failing and refusing to pay as agreed under either agreement.

20. As a result of the foregoing, Plaintiff has been damaged.

21. Wherefore, the Plaintiff, Brandon Associates, LLC demands payment of $147,940.60, plus interest, costs and reasonable attorneys' fees incurred in the collection of this sum.

COUNT II:

Unfair and Deceptive Acts or Practices, G.L. c. 93A, §11

22. Plaintiff restates and incorporates by reference its allegations in paragraphs 1-21 above.

23. Plaintiff Brandon is a "person" and engages in "trade or commerce" within the meaning of G.L. c. 93A, § 1.

24. Defendant FailSafe is a "person" and engages in "trade or commerce" within the meaning of G.L. c. 93A, § 1.

25. At all relevant times, FailSafe has been engaged in the conduct of trade and commerce in the Commonwealth of Massachusetts.

26. At all times relevant to this dispute, FailSafe assured Brandon that it had sufficient monies and/or resources to pay Brandon according to the May 1, 2003 and November 1, 2003 contracts and that FailSafe was intending to pay Brandon the monies owed.

27. At all times relevant to this dispute, FailSafe's President Paul Chirayath actively encouraged Brandon to continue lobbying services on behalf of FailSafe.

28. By representing to Brandon that it would honor financial obligations arising from the May 1, 2003 and November 1, 2003 contracts, and by encouraging Brandon to continue its lobbying efforts on behalf of FailSafe, FailSafe has willfully and knowingly engaged in unfair methods of competition and unfair and deceptive acts and practices in violation of G.L. c. 93A.

29. As a result, Brandon has suffered harm and damages for which FailSafe is liable.

COUNT III:

Reach and Apply

30. Plaintiff restates paragraphs 1-29 above and incorporates them herein as fully set forth.

31. Pursuant to G.L. c. 214, §3, Plaintiff seeks to reach and apply the FailSafe's ownership and/or exclusive rights to U.S. Patent No. 6,162,118 and to U.S. Patent Application No. 10/434,041.

32. Upon information and belief, FailSafe received exclusive rights to U.S. Patent No. 6,162,118 through a licensing agreement with Theodore A. M. Arts, a citizen of Canada residing at 312 Countryside Lane, Williamsville, New York 14221, a copy of which is attached hereto as Exhibit E.

33. Plaintiff will likely recover a judgment against FailSafe of at least $147,940.60, plus interest, costs and attorney fees.

34. Wherefore, Brandon prays this Court afford the following relief: (1) a preliminary injunction restraining FailSafe from assigning, selling or otherwise transferring to any party any and all of FailSafe's ownership and/or licensing rights to U.S. Patent No. 6,162,118 and to U.S. Patent Application No. 10/434,041; (2) a permanent injunction requiring same; and (3) a judgment permitting Brandon to reach and apply sums payable to FailSafe from the licensing agreements in the amount of $147,940.60 plus any such further sums as this Court deems just and equitable.

REQUESTS FOR RELIEF

WHEREFORE, Brandon requests that this Court:

1. Enter judgment for Brandon on all Counts of its Second Amended Verified Complaint;

2. Award Brandon monies owed by FailSafe for breach of contract, including $147,940.60 plus interest, costs and reasonable attorneys' fees incurred in the collection of same;

3. Award Brandon multiple damages and attorney fees on account of FailSafe's willful violation of G.L. c. 93A;

4. Grant Brandon preliminary injunctive relief that:
   a. precludes FailSafe from assigning, selling or otherwise transferring to any party any and all ownership and/or licensing rights to U.S. Patent No. 6,162,118 and to U.S. Patent Application No. 10/434,041;
   b. permits Brandon to reach and apply sums payable to

Exhibit A

## AGREEMENT FOR PROFESSIONAL SERVICES

This Agreement for Professional Services ("Agreement") is entered into as of the 1st Day of May 2003 (the "Effective Date") between Brandon Associates, LLC, a Massachusetts Limited Liability Company ("Brandon") and FailSafe Air Safety Systems Corp., 79 Fillmore Avenue, Tonawanda, NY 14150-2335 ("FailSafe") (together referred to as the "Parties").

### *Recitals*

Whereas, FailSafe desires to retain the services of Brandon for the purposes set forth in this Agreement, and

Whereas, Brandon desires to provide such services to FailSafe pursuant to the terms and conditions of this Agreement,

Now therefore, in consideration of the premises and of the mutual covenants herein contained, the parties agree as follows:

### *Scope of Services*

Brandon will work with FailSafe to facilitate contractual opportunities for FailSafe's technology with select state and federal agencies. Brandon will assist FailSafe's entry into markets it is seeking to penetrate by representing and promoting its interests in the area of homeland security and health and human services.

As of the Effective Date, Brandon team members shall include Donald B. Flanagan, President and CEO, Joe Penkala Esq., Federal Affairs Director and other Brandon staff members as required. Brandon reserves the right to alter the composition of the Brandon

team upon reasonable notice. Brandon team members will work to provide the following services:

a. a. Provide strategic consulting to develop of a long-term strategy in support of FailSafe's objectives relative to the federal sector.

b. b. Facilitate meetings with members of Congress who may be likely to assist FailSafe with selling to the federal government.

c. c. Provide assess to key federal agency officials, in agencies such as the Department of Health and Human Services, Department of Transportation and various divisions of the Department of Homeland Security.

d. d. Assist FailSafe in securing participation in a meeting with the Council on Private Sector Initiatives.

e. e. Facilitate meetings public safety and health and human services officials at the state level. These states may include Alabama, Arkansas, Florida, Georgia, Louisiana, New Mexico, Massachusetts, Rhode Island, California, New Hampshire, Texas and Connecticut.

*Project Term:*

This Agreement will commence upon the Effective Date and continue for a term of six (6) months. Upon the expiration of this Agreement, the parties will evaluate their business relationship and determine whether it is in their best interests to extend or amend the Agreement.

*Professional Fee:*

Brandon will be compensated one hundred thousand one hundred dollars ($111,100.00) in six equal monthly installments of eighteen thousand five hundred dollars ($18,500.00). FailSafe shall receive one invoice for Brandon's professional fee commencing on or about thirty days after the Effective Date, and shall receive monthly invoices thereafter. Invoices are due and payable in full immediately upon receipt. Brandon reserves the right to charge one and one half percent (1 ½%) penalty retroactive to the invoice date for payment(s) received after fifteen (15) days from the invoice date. In addition to the installment payment, FailSafe shall reimburse Brandon for reasonable expenses, inclusive of travel and related expenses, incurred by Brandon to carry out the services described herein. Brandon will make every effort to minimize expenses incurred on behalf of FailSafe and will obtain pre-approval of any expenses in excess of two hundred fifty dollars ($250.00) incurred on behalf of FailSafe.

### *General Terms:*

1. 1. This Agreement supercedes all prior verbal and written agreements, understandings and communications between the Parties and any amendment or modification of this Agreement shall be valid only if, and to the extent, initialed by both Parties, or as set forth in a new writing signed by both Parties.
2. 2. FailSafe agrees to cooperate with Brandon in performance of services under this Agreement and further agrees to provide such information, date, guidance, and support reasonably necessary for Brandon to accomplish its purposes, as set forth herein.
3. 3. Upon the request of Paul Chirayath, Brandon agrees to work in conjunction with Latham & Watkins in the furtherance of the terms of this Agreement, provided that no conflict of interest or other legitimate basis for refusal exists.
4. 4. FailSafe acknowledges that it shall be responsible for complying with all applicable federal and state reporting requirements for employers of lobbying agents. Brandon agrees to assist FailSafe with such reporting requirements as requested. Brandon shall not be liable for any failure on the part of FailSafe to comply with such reporting requirements.
5. 5. FailSafe agrees to comply with all federal laws and regulations regarding technology transfer and prohibitions on contracting with or engaging in financial transactions with individuals or foreign governments that are owned or controlled by individuals that support terrorism or are otherwise restricted by the federal government. FailSafe shall indemnify Brandon against any claims, losses, liability, or damages suffered or incurred by Brandon related to any violation by FailSafe of any laws or regulations relative to the interaction or connection of FailSafe to any individuals or foreign governments owned or controlled by individuals that support terrorism or are otherwise restricted by the federal government.

6. If any provision of this Agreement, or portion thereof, is determined to be invalid, unenforceable or void for any reason, such determination shall affect only that invalid, unenforceable or void portion of any provision, which shall be stricken from the Agreement, and shall not affect in any way the validity of Agreement or its remaining provisions.

7. 7. This Agreement shall terminate upon thirty (30) days advance written notice after either party provides a breaching party with written notice of a material breach of any provision of this Agreement including, without limitation, any delinquency in payment of any fees due hereunder, unless the breaching party has cured such breach during the thirty (30) day period.

8. This Agreement and any disputes arising out of or in relation to this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts and resolved exclusively in the courts sitting in the Commonwealth of Massachusetts. The Parties agree the Commonwealth of Massachusetts is a reasonable and convenient forum for the resolution of disputes, and each consents to the exclusive personal jurisdiction of such courts, and service of process by certified mail or national overnight carrier. *[handwritten margin note: Jurisdiction]*

9. FailSafe shall indemnify and hold harmless Brandon, its directors, officers, employees, and agents from and with respect to any losses, damages, claims or complaints (including without limitation reasonable attorney fees) arising from any act or omission of FailSafe in connection with any matter covered by this Agreement. Under no circumstances shall Brandon be liable to FailSafe or any other person or entity for special damages, incidental damages, consequential damages, indirect damages, loss of good will, loss of business profits, any and all commercial damages or loss, or exemplary or punitive damages. FailSafe's sole and exclusive remedy for any claim, damage or loss arising under this agreement, whether due to Brandon's negligence or other tort, and/or breach of duty shall be payment of liquidated damages equal to the services paid by FailSafe with respect to this Agreement. *[handwritten margin note: hold harmless]*

10. With the exception in Paragraph 5 and as related to the representations made regarding FailSafe's technology, Brandon shall indemnify and hold Failsafe harmless and shall indemnify and hold Failsafe's directors, officers, employees, and agents harmless from and with respect to any losses, damages, claims, or complaints (including without limitation reasonable attorneys' fees) arising from any act or omission of Brandon in connection with any matter covered by this Agreement. Other than with the exceptions noted above, under no circumstances shall Failsafe be liable to Brandon or any other person or entity for special damages, incidental damages, consequential damages, indirect damages, loss of good will, loss of business profits, and any and all commercial damages or loss or exemplary or punitive damages. Brandon's sole and exclusive remedy for any claim, damage or loss arising under this Agreement, whether due to Failsafe's negligence or other tort and/or breach of duty shall be payment of liquidated damages equal to the services rendered by Brandon and the amount received by Brandon from Failsafe with respect to the Agreement herein.

11. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their permitted successors and assigns.

11. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their permitted successors and assigns.
12. The following sections of the General Terms of this Agreement shall survive expiration or termination of this Agreement: Sections Three, Six, Seven, Eight and Nine

In witness whereof, the parties have executed this Agreement as of the date first above written.

_Donald Flanagan, President & CEO_
_Brandon Associates, LLC_
Dated: 6-16-03

_Paul Chirayath, President_
_FailSafe Air Safety Systems Corp._
Dated: 6-15-03

# AGREEMENT FOR PROFESSIONAL SERVICES

This Agreement for Professional Services ("Agreement") is entered into as of the 1st Day of November 2003 (the "Effective Date") between Brandon Associates, LLC, a Massachusetts Limited Liability Company ("Brandon") and FailSafe Air Safety Systems Corp., 79 Fillmore Avenue, Tonawanda, NY 14150-2335 ("FailSafe") (together referred to as the "Parties").

## *Recitals*

Whereas, FailSafe desires to retain the services of Brandon for the purposes set forth in this Agreement, and

Whereas, Brandon desires to provide such services to FailSafe pursuant to the terms and conditions of this Agreement,

Now therefore, in consideration of the premises and of the mutual covenants herein contained, the parties agree as follows:

## *Scope of Services*

Brandon will work with FailSafe to facilitate contractual opportunities for FailSafe's technology with select state and federal agencies. Brandon will assist FailSafe's entry into markets it is seeking to penetrate by representing and promoting its interests in the area of homeland security and health and human services.

As of the Effective Date, Brandon team members shall include Donald B. Flanagan, President and CEO, Joe Penkala Esq., Federal Affairs Director and other Brandon staff members as required. Brandon reserves the right to alter the composition of the Brandon team upon reasonable notice. Brandon team members will work to provide the following services:

a. Provide strategic consulting to develop of a long-term strategy in support of FailSafe's objectives relative to the federal sector.

b. Facilitate meetings with members of Congress who may be likely to assist FailSafe with selling to the federal government.

c. Provide assess to key federal agency officials, in agencies such as the Department of Health and Human Services, Department of Transportation and various divisions of the Department of Homeland Security.

1

d. Assist FailSafe in securing participation in a meeting with the Council on Private Sector Initiatives.

e. Facilitate meetings public safety and health and human services officials at the state level. These states may include Alabama, Arkansas, Florida, Georgia, Louisiana, New Mexico, Massachusetts, Rhode Island, California, New Hampshire, Texas and Connecticut.

## *Project Term:*

This Agreement will commence upon the Effective Date and continue on a <u>monthly basis</u> until terminated in writing by either party. This Agreement is contingent upon FailSafe's providing payment on a monthly basis of ten thousand dollars ($10,000.00) towards the outstanding balance owed to Brandon. Additionally, all outstanding debt to Brandon Associates, LLC shall become due and payable immediately upon FailSafe receiving aggregate funding and/or financing totaling one million dollars, despite termination of this Agreement.

## *Professional Fee:*

Brandon will be compensated a total of eighteen thousand dollars ($18,000) per month for its services for each month that Brandon performs services under this Agreement. FailSafe shall receive one invoice for Brandon's professional fee commencing on the Effective Date, and shall receive monthly invoices thereafter. Invoices are due and payable in full immediately upon receipt. Brandon reserves the right to charge one and one half percent (1 ½%) penalty retroactive to the invoice date for payment(s) received after fifteen (15) days from the invoice date. In addition to the installment payment, FailSafe shall reimburse Brandon for reasonable expenses, inclusive of travel and related expenses, incurred by Brandon to carry out the services described herein. Brandon will make every effort to minimize expenses incurred on behalf of FailSafe and will obtain pre-approval of any expenses in excess of two hundred fifty dollars ($250.00) incurred on behalf of FailSafe.

## *General Terms:*

1. FailSafe agrees to cooperate with Brandon in performance of services under this Agreement and further agrees to provide such information, date, guidance, and support reasonably necessary for Brandon to accomplish its purposes, as set forth herein.

2

2. FailSafe acknowledges that it shall be responsible for complying with all applicable federal and state reporting requirements for employers of lobbying agents. Brandon agrees to assist FailSafe with such reporting requirements as requested. Brandon shall not be liable for any failure on the part of FailSafe to comply with such reporting requirements.

3. FailSafe agrees to comply with all federal laws and regulations regarding technology transfer and prohibitions on contracting with or engaging in financial transactions with individuals or foreign governments that are owned or controlled by individuals that support terrorism or are otherwise restricted by the federal government. FailSafe shall indemnify Brandon against any claims, losses, liability, or damages suffered or incurred by Brandon related to any violation by FailSafe of any laws or regulations relative to the interaction or connection of FailSafe to any individuals or foreign governments owned or controlled by individuals that support terrorism or are otherwise restricted by the federal government.

4. If any provision of this Agreement, or portion thereof, is determined to be invalid, unenforceable or void for any reason, such determination shall affect only that invalid, unenforceable or void portion of any provision, which shall be stricken from the Agreement, and shall not affect in any way the validity of Agreement or its remaining provisions.

5. Upon the Renewal Period, this Agreement shall terminate upon thirty (30) days advance written notice after either party provides a breaching party with written notice of a material breach of any provision of this Agreement including, without limitation, any delinquency in payment of any fees due hereunder, unless the breaching party has cured such breach during the thirty (30) day period.

6. This Agreement and any disputes arising out of or in relation to this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts and resolved exclusively in the courts sitting in the Commonwealth of Massachusetts. The Parties agree the Commonwealth of Massachusetts is a reasonable and convenient forum for the resolution of disputes, and each consents to the exclusive personal jurisdiction of such courts, and service of process by certified mail or national overnight carrier.

7. FailSafe shall indemnify and hold harmless Brandon, its directors, officers, employees, and agents from and with respect to any losses, damages, claims or complaints (including without limitation reasonable attorney fees) arising from any act or omission of FailSafe in connection with any matter covered by this Agreement. Under no circumstances shall Brandon be liable to FailSafe or any other person or entity for special damages, incidental damages, consequential damages, indirect damages, loss of good will, loss of business profits, any and all commercial damages or loss, or exemplary or punitive damages. FailSafe's sole and exclusive remedy for any claim, damage or loss arising under this agreement, whether due to Brandon's negligence or other tort, and/or breach of duty shall be payment of liquidated damages equal to the services paid by FailSafe with respect to this Agreement.

8. With the exception in Sections Two and Three, and as related to the representations made regarding FailSafe's technology, Brandon shall indemnify

3

and hold Failsafe harmless and shall indemnify and hold Failsafe's directors, officers, employees, and agents harmless from and with respect to any losses, damages, claims, or complaints (including without limitation reasonable attorneys' fees) arising from any act or omission of Brandon in connection with any matter covered by this Agreement. Other than with the exceptions noted above, under no circumstances shall Failsafe be liable to Brandon or any other person or entity for special damages, incidental damages, consequential damages, indirect damages, loss of good will, loss of business profits, and any and all commercial damages or loss or exemplary or punitive damages. Brandon's sole and exclusive remedy for any claim, damage or loss arising under this Agreement, whether due to Failsafe's negligence or other tort and/or breach of duty shall be payment of liquidated damages equal to the services rendered by Brandon and the amount received by Brandon from Failsafe with respect to the Agreement herein.

9. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their permitted successors and assigns.

10. The following sections of the General Terms of this Agreement shall survive expiration or termination of this Agreement: Sections Two, Three, Six, Seven, Nine and Ten.

In witness whereof, the parties have executed this Agreement as of the date first above written.

_____
Donald Flanagan, President & CEO
*Brandon Associates, LLC*
Dated: 12-9-03

_____
Paul Chirayath, President
*FailSafe Air Safety Systems Corp.*
Dated: 12 11 03

4

Case 1:04-cv-12013-NMG   Document 34   Filed 12/03/2004   Page 14 of 14

Exhibit C

Brandon Associates LLC

| | Invoice Number | Invoice Date | Invoice Amount | | Paid by Failsafe | Fees | Expenses |
|---|---|---|---|---|---|---|---|
| FailSafe | 1121 | 06/01/03 | 18,500.00 | | 18,500.00 | 18,500.00 | - |
| FailSafe | 1132 | 07/01/03 | 18,600.00 | | 18,600.00 | 18,500.00 | 100.00 |
| FailSafe | 1148 | 08/01/03 | 19,944.60 | | 19,944.60 | 18,500.00 | 1,444.60 |
| FailSafe | 1159 | 09/02/03 | 18,600.00 | | 18,600.00 | 18,500.00 | 100.00 |
| FailSafe | 1171 | 10/01/03 | 20,866.10 | | 20,866.10 | 18,500.00 | 2,366.10 |
| FailSafe | 1185 | 11/01/03 | 19,693.78 | | 1,933.90 | 18,500.00 | 1,193.78 |
| FailSafe | 1202 | 12/01/03 | 19,059.21 | * | | 18,500.00 | 559.21 |
| FailSafe | 1214 | 01/01/04 | 18,617.68 | * | | 18,000.00 | 617.68 |
| FailSafe | 1227 | 02/02/04 | 18,515.26 | * | | 18,000.00 | 515.26 |
| FailSafe | 1236 | 03/01/04 | 20,348.53 | * | | 18,000.00 | 2,348.53 |
| FailSafe | 1252 | 04/01/04 | 19,414.70 | * | | 18,000.00 | 1,414.70 |
| FailSafe | 1263 | 05/03/04 | 18,828.28 | * | | 18,000.00 | 828.28 |
| FailSafe | 1277 | 06/01/04 | 18,897.06 | * | | 18,000.00 | 897.06 |
| Invoice Totals | | | 249,885.20 | | 98,444.60 [b] | 237,000.00 [a] | 9,385.20 [a] |

Balance Due Brandon Associates LLC [ a - b ]   $147,940.60

Payments by Failsafe

| Check # | Date | Amount |
|---|---|---|
| 1250 | 11/3/2003 | 10,000.00 |
| 1278 | 12/5/2003 | 8,500.00 |
| 1306 | 1/6/2004 | 10,000.00 |
| 1334 | 1/29/2004 | 10,000.00 |
| 1339 | 1/29/2004 | 10,000.00 |
| 1355 | 3/1/2004 | 9,944.60 |
| 1408 | 4/7/2004 | 10,000.00 |
| 97 | 4/29/2004 | 10,000.00 |
| 1054 | 6/16/2004 | 10,000.00 |
| 1121 | 8/23/2004 | 5,000.00 |
| 1129 | 8/30/2004 | 5,000.00 |
| Total to date | | 98,444.60 |

* Per the contract of November 1, 2003, Brandon should have been invoicing only $18,000 per month for fees.