## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BRANDON ASSOCIATES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Number: 04-12013 NMG |
| | ) | |
| v. | ) | |
| | ) | |
| FAILSAFE AIR SAFETY SYSTEMS | ) | **VERIFIED ANSWER** |
| CORP., | ) | **AND COUNTERCLAIM** |
| | ) | **TO SECOND AMENDED COMPLAINT** |
| Defendant. | ) | |
| | ) | |

The Defendant, *Failsafe Air Safety Systems Corp.*, by and through its counsel, *Sweder & Ross, LLP*, does herein set forth the Defendant's Verified Answer, Affirmative Defenses, and Counterclaims, in response to Plaintiff's *Second Amended Verified Complaint And Action To Reach And Apply*, filed December 3, 2004 ("Complaint").

1.  Defendant, *Failsafe Air Safety Systems Corp.* (hereinafter "FASS") admits the allegations contained in paragraph one (1) of Plaintiff's Complaint.

2.  Defendant admits the allegations contained in paragraph two (2) of Plaintiff's Complaint.

3.  Defendant admits the allegations contained in paragraph three (3) of Plaintiff's Complaint.

4.  Defendant admits the allegations contained in paragraph four (4) of Plaintiff's Complaint.

5.  Defendant admits the allegations contained in paragraph five (5), restates that *Brandon Associates, LLC* (hereinafter "Brandon") was to provide FASS with government lobbying services by facilitating contractual opportunities for FASS's

technology with key state and federal agencies by providing access to key federal and state agency officials and facilitating meetings, and avers that Brandon failed to fully perform with regard to all of the obligations that Brandon represented and warranted it would perform for FASS.

6.    The Defendant admits the allegations contained in paragraph six (6), restates that Brandon was to provide government lobbying services by facilitating contractual opportunities for FASS's technology with select state and federal agencies by providing access to key federal agency officials and facilitating meetings, and avers that Brandon failed to fully perform with regard to all of its obligations under the terms and conditions of the said November 1, 2003 Agreement. Additionally, FASS avers that the said November 1, 2003 Agreement includes contingency provisions which violate the Law of the Commonwealth of Massachusetts.

7.    Defendant admits the allegations contained in paragraph seven (7) and avers that Brandon breached the terms of the May 1, 2003 Agreement by failing to fully perform the obligations as set forth therein, as more further described in the Defendant's Counterclaim(s) as hereinafter set forth.

8.    The Defendant admits the allegations contained in paragraph eight (8) of the Plaintiff's Complaint and avers that Brandon breached its November 1, 2003 Agreement by failing to fully perform of its obligations thereunder, and by intentionally interfering with the business relationship by and between FASS and the Commonwealth of Massachusetts. Defendant, additionally, avers that the

November 1, 2003 Agreement includes contingency provisions which violate the Law of the Commonwealth of Massachusetts.

9.     The Defendant admits the allegations contained in paragraph nine (9) of Plaintiff's Complaint and further avers that all payments required to have been made, pursuant to the Agreement, were made on a monthly basis as required, and that the Defendant never breached the said Agreement, and that the said Agreement is in violation of the Law of the Commonwealth of Massachusetts, and that the Plaintiff breached the Agreement as hereinafter alleged in the Defendant's Counterclaim(s).

10.     The Defendant admits the allegations contained in paragraph ten (10) of Plaintiff's Complaint.

11.     The Defendant denies all of the allegations contained in paragraph eleven (11) of Plaintiff's Complaint.

12.     The Defendant denies the allegations contained in paragraph twelve (12) of Plaintiff's Complaint and further avers that while Brandon failed to fully perform its obligations with respect to providing lobbying services for FASS, it did help to create a business relationship between FASS and the Massachusetts Department of Public Health (DPH) which it then subsequently and wrongfully interfered with to the detriment of FASS.

13.     The Defendant denies all of the allegations contained in paragraph thirteen (13) of Plaintiff's Complaint.

14.     The Defendant denies the allegations contained in paragraph fourteen (14) and avers that all contracts were terminated as a result of the Plaintiff's breach of

3

contract, Brandon's illegal and improper conduct with respect to the performance of said contracts, and further avers that Brandon attempted to improperly induce Defendant into entering into further illegal contingency agreements with Boston Strategies, Inc., a shadow company controlled by Plaintiff and its partners, shareholders and employees in order to circumvent Massachusetts' restrictions on lobbyists engaging in contingent fee agreements.

15.   The Defendant denies all of the allegations contained in paragraph fifteen (15) of Plaintiff's Complaint and avers that as a result of the wrongful breach of contract, misrepresentation, fraud, and tortious interference of business relations committed by Plaintiff against Defendant and its customers, that Defendant has suffered and sustained irreparable and extensive injury and damage.

16.   The Defendant repeats its responses to paragraphs 1 through 15 set forth above as if fully stated herein.

17.   The Defendant denies the allegations contained in paragraph seventeen (17) of Plaintiff's Complaint.

18.   The Defendant denies the allegations contained in paragraph eighteen (18) of Plaintiff's Complaint.

19.   The Defendant denies the allegations contained in paragraph nineteen (19) of Plaintiff's Complaint.

20.   The Defendant denies the allegations contained in paragraph twenty (20) of Plaintiff's Complaint.

21.   The Defendant denies the allegations contained in paragraph twenty-one (21) of Plaintiff's Complaint.

22.    The Defendant repeats its responses to paragraphs 1 through 21 set forth above as if fully stated herein.

23.    The Defendant admits the allegations contained in paragraph twenty-three (23) of Plaintiff's Complaint.

24.    The Defendant denies the allegations contained in paragraph twenty-four (24) of Plaintiff's Complaint.

25.    The Defendant denies the allegations contained in paragraph twenty-five (25) of Plaintiff's Complaint.

26.    The Defendant admits the allegations contained in paragraph twenty-six (26) of Plaintiff's Complaint and avers that Defendant did in fact have sufficient monies and/or resources to make all payments owed to Brandon pursuant to the terms of the May 1, 2003 and November 1, 2003 contracts, and did in fact make all payments owed to Brandon pursuant to the terms of the May 1, 2003 and November 1, 2003 contracts.

27.    The Defendant admits the allegations contained in paragraph twenty-seven (27) of Plaintiff's Complaint and avers that, despite such encouragement, Brandon failed to fully perform such lobbying services on behalf of Defendant.

28.    The Defendant denies the allegations contained in paragraph twenty-eight (28) of Plaintiff's Complaint.

29.    The Defendant denies the allegations contained in paragraph twenty-nine (29) of Plaintiff's Complaint.

30.    The Defendant repeats its responses to paragraphs 1 through 29 set forth above as if fully stated herein.

31.  The Defendant denies the allegations contained in paragraph thirty-one (31) of Plaintiff's Complaint and avers that Plaintiff has no right whatsoever to reach and apply Defendant's ownership or exclusive rights to its patents or other intellectual properties.  Defendant further avers that the Agreements that were entered into by and between the parties specifically states:

> *"Brandon's sole and exclusive remedy for any claim, damage, or loss arising under this agreement, whether due to Failsafe's negligence or other tort and/or breach of duty shall be payment of liquidated damages equal to the services rendered by Brandon and the amount received by Brandon from Failsafe with respect to the agreement herein."*

32.  The Defendant admits the allegations contained in paragraph thirty-two (32) of Plaintiff's Complaint.

33.  The Defendant denies the allegations contained in paragraph thirty-three (33) of Plaintiff's Complaint.

34.  The Defendant denies all of the allegations contained in paragraph thirty-four (34) of Plaintiff's Complaint.

35.  The Defendant denies each and every other allegation not heretofore specifically admitted, denied, or otherwise controverted.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

36.  The Plaintiff's Causes of Action are barred on the grounds that Plaintiff has failed to state any claims upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

37.  The Plaintiff alleged Causes of Action have no merit whatsoever, because Plaintiff's Causes of Action are barred by their own Unclean Hands.

## THIRD AFFIRMATIVE DEFENSE

38.    The Plaintiff's Causes of Action are barred by the Doctrine of Illegality.

## FOURTH AFFIRMATIVE DEFENSE

39.    The Plaintiff's Causes of Action are barred as a result of Waiver and Estoppel.

## FIFTH AFFIRMATIVE DEFENSE

40.    The Plaintiff's Causes of Action are barred as a result of its own Wrongful Conduct and Affirmative breaches.

## SIXTH AFFIRMATIVE DEFENSE

41.    The Plaintiff's Causes of Action are barred as a result of its violations of Massachusetts' law and Federal law.

## SEVENTH AFFIRMATIVE DEFENSE

42.    The Plaintiff's Causes of Action are barred under the Doctrine of Equitable Apportionment, and Equitable Estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

43.    The Plaintiff's Causes of Action are barred by the very terms of the agreements entered into, which specifically restrict Plaintiff's claim for damages and which states:

> *"Brandon's sole and exclusive remedy for any claim, damage, or loss arising under this agreement, whether due to Failsafe's negligence or other tort and/or breach of duty shall be payment of liquidated damages equal to the services rendered by Brandon and the amount received by Brandon from Failsafe with respect to the agreement herein."*

## COUNTERCLAIM

## FACTS COMMON TO ALL OF DEFENDANT'S
## COUNTERCLAIMS AGAINST THE PLAINTIFF

44.     The Defendant repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) through forty-three (43), both inclusive as if fully set forth herein.

45.     The Defendant, *Failsafe Air Safety Systems Corp.* (FASS) is a corporation duly organized and existing under the Laws of the State of Delaware and maintaining its principal place of business at 79 Fillmore Avenue, Tonawanda, New York 14150.

46.     Upon information and belief, *Brandon Associates, LLC* (Brandon) is a Massachusetts Limited Liability Company with its principal place of business at 160 Commonwealth Avenue, Boston, Massachusetts 02116.

47.     FASS is a manufacturer, seller, reseller, distributor, marketer, and exclusive license holder and patent owner of air purification process, technology, and products.

48.     FASS has engaged in business in the United States of America and throughout the world, and is a leading provider of isolation and air purification devices for the medical, industrial, and commercial markets.

49.     FASS, in its business activity, engages third parties for purposes of sales, marketing advice, access to government contacts, both domestic and abroad, and has engaged in this business since June of 2002.

50. In pursuing its business activities, FASS was introduced to Brandon and its CEO and President Donald Flannigan (Flannigan).

51. After preliminary discussions and negotiations ensued, the Plaintiff, Brandon, and its President and CEO Flannigan, warranted and represented that it maintained and owned, as a registered lobbyist for the Commonwealth of Massachusetts, indispensable and key government contacts that could be easily cultivated for purposes of enhancing the business of FASS.

52. After the initial introduction was made to Brandon, the Plaintiff, and Flannigan, Brandon warranted and represented that it would use its existing contacts within the Bush' administration, the United States Congress, and specific Federal agencies and State agencies to allow FASS access to new markets.

53. Brandon further warranted and represented that they would, among other things,

> "a. Provide strategic consulting, develop a long-term strategy in support of Failsafe's objectives relative to the federal government;
> b. Facilitate meetings with member of Congress who would assist Failsafe in selling its goods to the federal government;
> c. Provide access to federal agencies, including Health and Human Services, the Department of Transportation, and Homeland Security;
> d. Assist Failsafe in securing participation in meetings with the counsel on private sector initiatives;
> e. Facilitate meetings with the Public Safety and Health and Human Services' officials at state levels, including the State of Alabama, Arkansas, Florida, Georgia, New Mexico, Massachusetts, Rhode Island, California, New Hampshire, Texas, and Connecticut."

54. The above representations were made by Flannigan, as CEO and President of Brandon, and by Brandon to FASS.

55. After these warranties and representations were made by Flannigan and Brandon to FASS, Brandon failed and refused to supply strategic consulting to develop a

long-term strategy in support of FASS' objectives relative to the Federal government; failed to facilitate meetings with members of Congress who would assist FASS in selling its goods to the Federal government; failed to provide access to key Federal agencies, including Health and Human Services, the Department of Transportation, and Homeland Security; failed to assist FASS in securing participation in meetings with counsel on private section initiatives; and wholly failed and refused to facilitate meetings with Public Safety and Health and Human Service officials at state levels including, but not limited to, Alabama, Arkansas, Florida, Georgia, Louisiana, New Mexico, Massachusetts, Rhode Island, California, New Hampshire, Texas, and Connecticut.

56.   Prior to the introduction to Brandon, FASS already had, on its own, previously maintained contact with General Services Administration and the Veterans' Administration; it had obtained approval from the Department of Defense for contracts with the Federal government; and FASS' products, prior to even being introduced Brandon, had already been cleared by the Food and Drug Administration, registered with the Environmental Protection Agency, and had established relationships with certain Congressmen, Senators, and had extensive governmental contacts.

57.   Contrary to its stated goals, Brandon, its agents, servants, and employees, failed and refused to supply any strategic consulting and, as a result thereof, FASS lost extensive business contacts and benefits that it had with General Services Administration, because of the lack of sales activity that was promised to be cultivated by the Plaintiff.

58.   In addition to the foregoing, the Plaintiff failed to facilitate meetings with members of Congress; failed to assist in establishing relationships with the Federal government and its agencies; and the only meetings that FASS had with Congressional representatives took place as a result of introductions made prior to FASS having ever heard of Brandon.

59.   When attempts by Brandon were made to engage in and have contacts and meetings with Congressmen, specifically, a Congressman in charge of the Veterans' Administration budget, the individual who attended the meeting had no ability whatsoever to engage in business with FASS, knew nothing about FASS and, as a result of Brandon's inactivity and breaches of contract, caused the total and complete failure.

60.   This conduct of Brandon and its inaction and refusal to provide strategic consulting, as warranted and represented, has caused FASS and its reputation to suffer irreparably.

61.   Brandon, although representing that it had key access to Federal agencies, failed to provide any such access because they were unable to make arrangements for such meetings to take place.

62.   In addition to the foregoing, Brandon warranted and represented that they would arrange for productive and successful presentations to the Bush' administration, Tommy Thompson, the Department of Health and Human Services, Norm Minetta, the United States' Department of Transportation, Asa Hutchinson, the Undersecretary of Border and Transportation Security, and the Department of Homeland Security.

63. Brandon wholly failed and refused to make any attempts to even contact said agencies, with the exception of a meeting with the Department of Health and Human Services that completely failed.

64. Brandon never secured any participation or assisted in participation and meetings with the Counsel of Private Section Initiatives, and failed to make any of the contacts that they represented would be made as a result of their efforts.

65. Despite the failure of Brandon to perform and comply under the terms and conditions of the Agreements that they entered into, FASS made payments in the sum of Ten Thousand Dollars ($10,000.00) each and every month in amounts exceeding Ninety-Five Thousand Dollars ($95,000.00), even though FASS never received the funding that Brandon represented and warranted would be forthcoming as a result of Brandon's efforts.

66. Under a paragraph of the contract in the November 1, 2003 Agreement, a Ten Thousand Dollar ($10,000.00) per month payment would be made by FASS to Brandon *provided, however, that Failsafe was to receive funding of One Million Dollars ($1 Million) or more through the efforts of Brandon.*

67. After FASS paid over Ninety-Five Thousand Dollars ($95,000.00) to Brandon, Flannigan demanded that he be given an equity position in FASS, and be appointed as an officer in FASS.

68. In doing so, and in direct violation of M.G.L. c. 3, §39 and §47, as well as the Ethics Rules and Regulations defining the conduct of lobbyists in the Commonwealth of Massachusetts, this conduct constituted an engagement between FASS and Brandon, which resulted in a conflict of interest and a shifting

of the efforts of Brandon to its shadow company, Boston Strategies, Inc., thus converting the efforts of Brandon from its initial attempts in lobbying and raising money to becoming an equity owner in FASS, through Brandon's designees and other agents and employees.

69.    In furtherance of this illegal scheme, Flannigan made arrangements with Steve Peltzman (Peltzman) and Henry McCusker (McCusker) suggesting that Peltzman be hired as the CEO of FASS and that Boston Strategies, Inc. and McCusker, together with Flannigan and Peltzman, hold significant equity in FASS and act as FASS' straw man.

70.    These activities and suggestions were rejected by FASS as a transparent attempt by Flannigan and his designees to illegally obtain a substantial piece of FASS' stock interests and equity ownership.

71.    Thereafter, after FASS refused to engage in illegal and unethical activities suggested by Flannigan and Brandon, Flannigan and Brandon threatened FASS and attempted to victimize FASS by alleging that unless FASS turned over a substantial portion of its equity and ownership, that Brandon would take action that would raise doubts with government procurement officials and would impair and impede FASS' eligibility to bid on future contracts, and would impair present contracts that FASS was and is a party to.

72.    That because of the willful and wrongful conduct of Brandon, its agents, servants, and employees, and because of its failure to comply with its obligations, FASS has suffered damages and injuries as a result of the Plaintiff's deceitful, improper, fraudulent and illegal conduct.

## COUNT I
### Breach of Contract

73.    The Defendant repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though seventy-two (72), both inclusive as if fully set forth herein.

74.    Brandon breached the Agreements entered into by and between Brandon and FASS by failing and refusing to comply with the Agreements entered into by and between them.

75.    That as a result of, and as a consequence of, the Plaintiff's Breach of Contract, the Defendant has been required to expend large sums of monies; the Defendant has been required to engage in remedial activity to correct the breaches occasioned by the Plaintiff; and, as a direct result of the breaches of contract committed by the Plaintiff, and by Flannigan, the Defendant has been caused to suffer and sustain injury and damages.

## COUNT II
### Breach of Contract:  Confidentially

76.    The Defendant repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though seventy-five (75), both inclusive as if fully set forth herein.

77.    That the documents that were submitted by Defendant to the Plaintiff, in connection with the contractual obligations then and there existing by and between Plaintiff and Defendant, were and remain confidential.

78.    That the Plaintiff agreed that all documentation, memoranda, negotiations, and properties placed in the hands of the Plaintiff, by the Defendant, would remain

confidential and would not be disclosed or disseminated to any third parties without prior written approval and permission given by Defendant to Plaintiff.

79.    That the Plaintiff has breached the confidentiality provisions of the Agreements entered into by and between Brandon and FASS by violating the confidentiality provisions in their Agreements, and by violating the confidentiality provisions that are included as a portion of the documents that were improperly disclosed and disseminated by the Plaintiff (including the attachment of said confidential documents to the Plaintiff's previous filings in this litigation).

80.    That as a result of the breach of the confidentiality provisions of their Agreements, and as a result of the breach of the confidential nature of the documents and materials placed in the hands of the Plaintiff by the Defendant, the Defendant has suffered immediate and irreparable injury and damages, such that it is entitled to injunctive relief and an award of damages.

## COUNT III
## Intentional Interference With A Business Relationship

81.    The Defendant repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though eighty (80), both inclusive as if fully set forth herein.

82.    That during the term of the Agreements that were in existence by and between the parties herein, the Plaintiff knew of the business relationships that existed by, between, and among FASS, its customers, the Commonwealth of Massachusetts, and the General Services Administration.

83.    In addition to the foregoing, the Plaintiff knew of the business relationships existing by, between, and among FASS, its officers, directors, shareholders, and others.

84. That the Plaintiff, as a result of its wrongful conduct committed against the Defendant and as a result of its improper and willful conduct and breach of its Agreements with the Defendant FASS, the Plaintiff has intentionally interfered with the business relations that then existed and continue to exist by, between, and among FASS, its customers, the Commonwealth of Massachusetts, the General Services Administration of the United States of America, and the officers, directors, and shareholders of FASS.

85. That as a result of the foregoing, solely as a result of the Plaintiff's wrongful conduct, the Defendant has been caused to suffer damages.

## COUNT IV
## Breach of Good Faith

86. The Defendant repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though eighty-five (85), both inclusive as if fully set forth herein.

87. That by entering into the Agreements as above-referenced, and entering into the confidentiality provisions, which are necessarily a part of the Agreements entered into by and between Plaintiff and Defendant, the Plaintiff had, and continues to have, a duty of good faith that is owed by the Plaintiff to the Defendant.

88. That the above-referenced conduct of the Plaintiff constitutes a breach of the duty of good faith.

89. That solely as a result of the Plaintiff's wrongful breach of its obligations to the Defendant herein, the Defendant has been caused to suffer immediate, irreparable injuries and damages.

90.    That as a result of the foregoing, the Defendant demands that injunctive relief be granted to the Defendant, together with damages and punitive damages.

## COUNT V
### Unjust Enrichment

91.    The Defendant repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though ninety (90), both inclusive as if fully set forth herein.

92.    That despite the breaches of contract, and breach of confidentiality, and breach of good faith committed by the Plaintiff as against the Defendant, the Defendant made payments to the Plaintiff in sums exceeding Ninety-Five Thousand Dollars ($95,000.00).

93.    That the Plaintiff has been unjustly enriched with respect to the Ninety-Five Thousand Dollars ($95,000.00) has paid to it.

94.    That as a result of the foregoing, the Defendant demands Judgment against the Plaintiff in the sum of Ninety-Five Thousand Dollars ($95,000.00) representing unjust enrichment as a result of the said Plaintiff's breaches as above referenced.

## COUNT VI
### Fraud

95.    The Defendant repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though ninety-four (94), both inclusive as if fully set forth herein.

96.    The representations and warranties made by the Plaintiff to the Defendant as set forth in paragraphs seventy-four (74), seventy-five (75), seventy-six (76), seventy-seven (77), seventy-nine (79), eighty (80), eighty-one (81), eighty-three (83), eighty-four (84), and eighty-five (85) were false and fraudulent, and made

knowingly or intentionally to deceive the Defendant into engaging in business with the Plaintiff herein.

97.    In addition to the foregoing, the Plaintiff's conduct, as set forth in paragraphs eighty-nine (89), ninety (90), ninety-one (91), ninety-two (92), and ninety-three (93), was conduct that constitutes fraud, misrepresentation, and deceit.

98.    Defendant justifiably relied on the Plaintiff's deceitful conduct and misrepresentations, and as a result of the fraud, misrepresentation, deceit, and the attempts to convert the assets, stock, and equity of the Defendant, the Defendant has been injured and damaged.

99.    Plaintiff's conduct was willful and wonton.

100.   That solely as a result of the fraud committed by the Plaintiff against the Defendant, the Defendant has been injured and damaged, and further demands punitive damages be awarded against the Plaintiff.


**WHEREFORE**, the Defendant demands Judgment against the Plaintiff as follows:

a.    Dismissing the Plaintiff's Complaint in its entirety;

b.    Granting to the Defendant all of the relief requested by the Defendant in its Causes of Action and Counterclaims in the form of both compensatory damages and, where requested punitive damages;

c.    That an award of attorneys' fees be granted to the Defendant against the Plaintiff in an amount within the jurisdictional limits of this Court;

d.    That the Court grant such other and further relief as may be just and proper in the premises, together with the costs of these proceedings.

## TRIAL BY JURY

The Defendant demands a Trial by Jury of all issues of fact in connection with the

Defendant's Counterclaims and its defenses against the Plaintiff herein.

DEFENDANT,
*Failsafe Air Safety Systems Corp.*
By its attorneys,

Laurie M. Ruskin, *Of Counsel*, BBO# 630374
SWEDER & ROSS LLP
21 Custom House Street, Suite 300
Boston, MA 02110
(617) 646-4466

Dated: December 29 , 2004

### CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served
upon the attorney of record for each of the other parties in this action
by hand or U.S./mail, this 29th day of December, 2004.

Laurie M. Ruskin

## CORPORATE VERIFICATION

STATE OF NEW YORK )
COUNTY OF ERIE ) ss.:
CITY OF BUFFALO )

Paul Chirayath, being duly sworn deposes and says: that deponent is the President of Failsafe Air Safety Systems Corp., the corporation named in the within action; that he has read the foregoing Answer and Counterclaim and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as those matters deponent believes it to be true. Deponent further says that the reason this verification is made by deponent and not by Defendant is because the said Defendant is a corporation and the grounds of deponent's belief as to all matters in the said Answer not stated upon his own knowledge, are investigations which deponent has caused to be made concerning the subject matter of this Answer and Counterclaim and information acquired by deponent in the course of his duties as an officer of said Defendant corporation and from the books and papers of said corporation.

Paul Chirayath

Sworn to before me this
28 day of December, 2004.

Crystal A. Standish
Notary Public/Commissioner of Deeds

65