## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

BRANDON ASSOCIATES, LLC,
    *Plaintiff,*

      v.

FAILSAFE AIR SAFETY SYSTEMS CORP.,
    *Defendant/Plaintiff-in-Counterclaim,*

      v.

DONALD B. FLANAGAN, in his individual
capacity
    *Defendant-in-Counterclaim.*

Civil Action No. 04-12013 NMG

**ANSWER AND
AMENDED COUNTERCLAIM
TO SECOND AMENDED COMPLAINT**

The Defendant, *Failsafe Air Safety Systems Corp.*, by and through its counsel, *Sweder & Ross, LLP*, does herein set forth the Defendant's Verified Answer, Affirmative Defenses, and Counterclaims, in response to Plaintiff's *Second Amended Verified Complaint And Action To Reach And Apply*, filed December 3, 2004 ("Complaint").

1.    Defendant, *Failsafe Air Safety Systems Corp.* (hereinafter "FASS") admits the allegations contained in paragraph one (1) of Plaintiff's Complaint.

2.    Defendant admits the allegations contained in paragraph two (2) of Plaintiff's Complaint.

3.    Defendant admits the allegations contained in paragraph three (3) of Plaintiff's Complaint.

4.    Defendant admits the allegations contained in paragraph four (4) of Plaintiff's Complaint.

5.     Defendant admits the allegations contained in paragraph five (5), restates that *Brandon Associates, LLC* (hereinafter "Brandon") was to provide FASS with government lobbying services by facilitating contractual opportunities for FASS's technology with key state and federal agencies by providing access to key federal and state agency officials and facilitating meetings, and avers that Brandon failed to fully perform with regard to all of the obligations that Brandon represented and warranted it would perform for FASS.

6.     The Defendant admits the allegations contained in paragraph six (6), restates that Brandon was to provide government lobbying services by facilitating contractual opportunities for FASS's technology with select state and federal agencies by providing access to key federal agency officials and facilitating meetings, and avers that Brandon failed to fully perform with regard to all of its obligations under the terms and conditions of the said November 1, 2003 Agreement. Additionally, FASS avers that the said November 1, 2003 Agreement includes contingency provisions which violate the Law of the Commonwealth of Massachusetts.

7.     Defendant admits the allegations contained in paragraph seven (7) and avers that Brandon breached the terms of the May 1, 2003 Agreement by failing to fully perform the obligations as set forth therein, as more further described in the Defendant's Counterclaim(s) as hereinafter set forth.

8.     The Defendant admits the allegations contained in paragraph eight (8) of the Plaintiff's Complaint and avers that Brandon breached its November 1, 2003 Agreement by failing to fully perform of its obligations thereunder, and by

2

intentionally interfering with the business relationship by and between FASS and the Commonwealth of Massachusetts. Defendant, additionally, avers that the November 1, 2003 Agreement includes contingency provisions which violate the Law of the Commonwealth of Massachusetts.

9.     The Defendant admits the allegations contained in paragraph nine (9) of Plaintiff's Complaint and further avers that all payments required to have been made, pursuant to the Agreement, were made on a monthly basis as required, and that the Defendant never breached the said Agreement, and that the said Agreement is in violation of the Law of the Commonwealth of Massachusetts, and that the Plaintiff breached the Agreement as hereinafter alleged in the Defendant's Counterclaim(s).

10.    The Defendant admits the allegations contained in paragraph ten (10) of Plaintiff's Complaint.

11.    The Defendant denies all of the allegations contained in paragraph eleven (11) of Plaintiff's Complaint.

12.    The Defendant denies the allegations contained in paragraph twelve (12) of Plaintiff's Complaint and further avers that while Brandon failed to fully perform its obligations with respect to providing lobbying services for FASS, it did help to create a business relationship between FASS and the Massachusetts Department of Public Health (DPH) which it then subsequently and wrongfully interfered with to the detriment of FASS.

13.    The Defendant denies all of the allegations contained in paragraph thirteen (13) of Plaintiff's Complaint.

14.     The Defendant denies the allegations contained in paragraph fourteen (14) and avers that all contracts were terminated as a result of the Plaintiff's breach of contract, Brandon's illegal and improper conduct with respect to the performance of said contracts, and further avers that Brandon attempted to improperly induce Defendant into entering into further illegal contingency agreements with Boston Strategies, Inc., a shadow company controlled by Plaintiff and its partners, shareholders and employees in order to circumvent Massachusetts' restrictions on lobbyists engaging in contingent fee agreements.

15.     The Defendant denies all of the allegations contained in paragraph fifteen (15) of Plaintiff's Complaint and avers that as a result of the wrongful breach of contract, misrepresentation, fraud, and tortious interference of business relations committed by Plaintiff against Defendant and its customers, that Defendant has suffered and sustained irreparable and extensive injury and damage.

16.     The Defendant repeats its responses to paragraphs 1 through 15 set forth above as if fully stated herein.

17.     The Defendant denies the allegations contained in paragraph seventeen (17) of Plaintiff's Complaint.

18.     The Defendant denies the allegations contained in paragraph eighteen (18) of Plaintiff's Complaint.

19.     The Defendant denies the allegations contained in paragraph nineteen (19) of Plaintiff's Complaint.

20.     The Defendant denies the allegations contained in paragraph twenty (20) of Plaintiff's Complaint.

21.     The Defendant denies the allegations contained in paragraph twenty-one (21) of Plaintiff's Complaint.

22.     The Defendant repeats its responses to paragraphs 1 through 21 set forth above as if fully stated herein.

23.     The Defendant admits the allegations contained in paragraph twenty-three (23) of Plaintiff's Complaint.

24.     The Defendant denies the allegations contained in paragraph twenty-four (24) of Plaintiff's Complaint.

25.     The Defendant denies the allegations contained in paragraph twenty-five (25) of Plaintiff's Complaint.

26.     The Defendant admits the allegations contained in paragraph twenty-six (26) of Plaintiff's Complaint and avers that Defendant did in fact have sufficient monies and/or resources to make all payments owed to Brandon pursuant to the terms of the May 1, 2003 and November 1, 2003 contracts, and did in fact make all payments owed to Brandon pursuant to the terms of the May 1, 2003 and November 1, 2003 contracts.

27.     The Defendant admits the allegations contained in paragraph twenty-seven (27) of Plaintiff's Complaint and avers that, despite such encouragement, Brandon failed to fully perform such lobbying services on behalf of Defendant.

28.     The Defendant denies the allegations contained in paragraph twenty-eight (28) of Plaintiff's Complaint.

29.     The Defendant denies the allegations contained in paragraph twenty-nine (29) of Plaintiff's Complaint.

30.    The Defendant repeats its responses to paragraphs 1 through 29 set forth above as if fully stated herein.

31.    The Defendant denies the allegations contained in paragraph thirty-one (31) of Plaintiff's Complaint and avers that Plaintiff has no right whatsoever to reach and apply Defendant's ownership or exclusive rights to its patents or other intellectual properties. Defendant further avers that the Agreements that were entered into by and between the parties specifically states:

> *"Brandon's sole and exclusive remedy for any claim, damage, or loss arising under this agreement, whether due to Failsafe's negligence or other tort and/or breach of duty shall be payment of liquidated damages equal to the services rendered by Brandon and the amount received by Brandon from Failsafe with respect to the agreement herein."*

32.    The Defendant admits the allegations contained in paragraph thirty-two (32) of Plaintiff's Complaint.

33.    The Defendant denies the allegations contained in paragraph thirty-three (33) of Plaintiff's Complaint.

34.    The Defendant denies all of the allegations contained in paragraph thirty-four (34) of Plaintiff's Complaint.

35.    The Defendant denies each and every other allegation not heretofore specifically admitted, denied, or otherwise controverted.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

36.    The Plaintiff's Causes of Action are barred on the grounds that Plaintiff has failed to state any claims upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

37.     The Plaintiff alleged Causes of Action have no merit whatsoever, because Plaintiff's Causes of Action are barred by their own Unclean Hands.

## THIRD AFFIRMATIVE DEFENSE

38.     The Plaintiff's Causes of Action are barred by the Doctrine of Illegality.

## FOURTH AFFIRMATIVE DEFENSE

39.     The Plaintiff's Causes of Action are barred as a result of Waiver and Estoppel.

## FIFTH AFFIRMATIVE DEFENSE

40.     The Plaintiff's Causes of Action are barred as a result of its own Wrongful Conduct and Affirmative breaches.

## SIXTH AFFIRMATIVE DEFENSE

41.     The Plaintiff's Causes of Action are barred as a result of its violations of Massachusetts' law and Federal law.

## SEVENTH AFFIRMATIVE DEFENSE

42.     The Plaintiff's Causes of Action are barred under the Doctrine of Equitable Apportionment, and Equitable Estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

43.     The Plaintiff's Causes of Action are barred by the very terms of the agreements entered into, which specifically restrict Plaintiff's claim for damages and which states:

> *"Brandon's sole and exclusive remedy for any claim, damage, or loss arising under this agreement, whether due to Failsafe's negligence or other tort and/or breach of duty shall be payment of liquidated damages equal to the services rendered by Brandon and the amount received by Brandon from Failsafe with respect to the agreement herein."*

**COUNTERCLAIM**

**FACTS COMMON TO ALL CLAIMS**

44.     The Defendant repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) through forty-three (43), both inclusive as if fully set forth herein.

45.     The Defendant, *Failsafe Air Safety Systems Corp.* ("FASS") is a corporation duly organized and existing under the Laws of the State of Delaware and maintaining its principal place of business at 79 Fillmore Avenue, Tonawanda, New York 14150.

46.     Upon information and belief, *Brandon Associates, LLC* ("Brandon") is a Massachusetts Limited Liability Company with its principal place of business at 160 Commonwealth Avenue, Boston, Massachusetts 02116.

47.     Upon information and belief, third-party Defendant, *Donald B. Flanagan*, is the President and CEO of Brandon, and a Massachusetts resident.

48.     FASS is a manufacturer, seller, reseller, distributor, marketer, and exclusive license holder and patent owner of air purification process, technology, and products.

49.     FASS has engaged in business in the United States of America and throughout the world, and is a leading provider of isolation and air purification devices for the medical, industrial, and commercial markets.

50.     FASS, in its business activity, engages third parties for purposes of sales, marketing advice, access to government contacts, both domestic and abroad, and has engaged in this business since June of 2002.

51.     In pursuing its business activities, FASS was introduced to Brandon and its CEO and President, Donald B. Flanagan ("Flanagan") in or around April of 2003.

52.     After preliminary discussions and negotiations ensued, Brandon, through its President and CEO Flanagan, represented that it was a registered lobbyist for the Commonwealth of Massachusetts, and had indispensable and key government contacts that could be easily cultivated for purposes of enhancing the business of FASS.

53.     Brandon, through Flanagan, represented that it would use its existing contacts within the Bush administration, the United States Congress, and specific Federal agencies and State agencies to allow FASS access to new markets.

54.     In two agreements executed between Brandon and FASS, both entitled Agreement For Professional Services (with effective dates of May 1, 2003, and November 1, 2003) ("Agreements"), Brandon warranted and represented that they would, among other things,

> a.  *Provide strategic consulting to develop a long-term strategy in support of Failsafe's objectives relative to the federal sector;*
> b.  *Facilitate meetings with member of Congress who may be likely to assist Failsafe with selling to the federal government;*
> c.  *Provide access to key federal agency officials, in agencies such as the Department of Health and Human Services, Department of Transportation, and various divisions of the Department of Homeland Security;*
> d.  *Assist Failsafe in securing participation in a meeting with the Council on Private Sector Initiatives;*
> e.  *Facilitate meetings with public safety and health and human services officials at state level.  These states may include Alabama, Arkansas, Florida, Georgia, Louisiana, New Mexico, Massachusetts, Rhode Island, California, New Hampshire, Texas, and Connecticut.*

55.    Brandon, through Flanagan, represented that it would have results within 90 to 120 days, and that the income generated from these contacts would more than cover the cost to FASS for Brandon's lobbying services.

56.    Upon information and belief, all of the representations made by Brandon described above were made with the intention of causing FASS to engage Brandon as its lobbyist, and, in reliance on such representations, FASS did, in fact, engage Bandon to provide the services described above.

57.    However, contrary to the representations described above, and in breach of its obligations under its Agreements with FASS, Brandon failed to provide strategic consulting to develop a long-term strategy in support of FASS' objectives relative to the Federal government; failed to facilitate meetings with members of Congress who would assist FASS in selling its goods to the Federal government; failed to provide access to key Federal agencies, including Health and Human Services, the Department of Transportation, and Homeland Security; failed to assist FASS in securing participation in meetings with the Council on Private Sector Initiatives; and failed to facilitate meetings with Public Safety and Health and Human Service officials at state levels including, but not limited to, Alabama, Arkansas, Florida, Georgia, Louisiana, New Mexico, Massachusetts, Rhode Island, California, New Hampshire, Texas, and Connecticut.

58.    FASS also had engaged Brandon in order for Brandon to provide strategic consulting services aimed at enhancing the business relationships FASS already had with certain governmental entities.  For example, prior to its introduction to Brandon, FASS already had, on its own, previously maintained contact with

General Services Administration and the Veterans' Administration; it had obtained approval from the Department of Defense for contracts with the Federal government; and FASS' products, prior to even being introduced Brandon, had already been cleared by the Food and Drug Administration, registered with the Environmental Protection Agency, and had established relationships with certain Congressmen, Senators, and had extensive governmental contacts.

59.    However, contrary to its contractual obligations and representations, Brandon failed to provide such strategic consulting services, and, as a result thereof, FASS lost extensive business contacts and benefits that it had with such entities like the General Services Administration because of the lack of sales activity that Brandon promised to cultivate.

60.    In addition to the foregoing, Brandon failed to facilitate meetings with members of Congress; and failed to assist in establishing relationships with the Federal government and its agencies.  In fact, the only meaningful meetings that FASS had with Congressional representatives took place as a result of introductions made prior to FASS involvement with Brandon.

61.    Whatever minimal efforts Brandon made to facilitate governmental contacts also failed because Brandon either misrepresented the relationship or had failed to properly develop the relationship, e.g., while Brandon arranged a meeting with a Congressman in charge of the Veterans' Administration budget, the Congressman's representative who attended the meeting knew nothing about FASS and had no ability whatsoever to engage in business with FASS.

62.    Brandon's failure to provide strategic consulting, as warranted and represented, caused irreparable injury to FASS and its reputation.

63.    Brandon, although representing that they had key access to Federal agencies, failed to provide any such access because they were unable to make arrangements for such meetings to take place.

64.    In addition to the foregoing, Brandon represented that it would arrange productive and successful presentations to the Bush' administration, Tommy Thompson, the Department of Health and Human Services, Norm Minetta, the United States' Department of Transportation, Asa Hutchinson, the Undersecretary of Border and Transportation Security, and the Department of Homeland Security.

65.    Brandon failed to make any attempts to even contact said agencies, with the exception of a meeting with the Department of Health and Human Services that completely failed.

66.    Brandon never secured any participation or assisted in participation and meetings with the Council on Private Sector Initiatives, and failed to make any of the contacts that they represented would be made as a result of their efforts.

67.    Brandon failed to fully perform under the contract and failed to deliver the contacts and services it represented it could because Brandon, upon information and belief, did not have, and knew that it did not have, the full capacity to provide such contacts, and, given whatever abilities it did have, refused to provide the services promised.

68.    Despite the failure of Brandon to fully perform and comply under the terms and conditions of the Agreements that they entered into, FASS made payments in the

sum of Ten Thousand Dollars ($10,000.00) each and every month in amounts exceeding Ninety-Five Thousand Dollars ($95,000.00), even though FASS never fully received the benefit that Brandon represented and warranted would be generated as a result of its lobbying and consulting services and efforts.

69.    In addition to the above, starting in or around the spring of 2004, Flanagan, acting outside of the scope of Brandon's contract with FASS, engaged in a pattern of conduct for his own benefit which interfered in the contractual relationship between Brandon and FASS, and which interfered in the business relationship between FASS and the Commonwealth of Massachusetts.

70.    More specifically, upon information and belief, Flanagan sought to obtain an equity interest in FASS (and to be appointed as an officer in FASS) for his own purposes and to his own personal benefit, and to that end engaged in a course of conduct designed to benefit himself at the expense of Brandon's contractual obligations to FASS.

71.    Upon information and belief, Flanagan sought to secure this interest by getting FASS to enter into a business relationship with what FASS believes to be his consulting firm, Boston Strategies, Inc.  Thus, to the detriment of the business relationship between FASS and Brandon, Flanagan, through his consulting firm, Boston Strategies, Inc., sought to enter into a new agreement with FASS as a dealer and equity holder in FASS.

72.    Upon information and belief, in an effort to develop his own business relationship with FASS outside of FASS' relationship with Brandon and to eventually secure

13

his own equity interest in FASS, Flanagan convinced FASS to allow him to assist FASS in raising investment capital.

73. Once Flanagan secured FASS' agreement that he would engage in fundraising, Flanagan caused Brandon – which relies primarily on Flanagan to carry out its lobbying activities – to curtail its lobbying activities on behalf of FASS.

74. Upon information and belief, Flanagan caused Brandon to curtail its lobbying efforts so that he could first secure his equity interest in FASS, knowing that whatever interest he could acquire then would only be enhanced once FASS significantly expanded its governmental business and experienced serious business growth. Thus, Flanagan caused Brandon to curtail whatever lobbying efforts it could or would make, as well as cease its strategic consulting services, to maximize his own personal investment that he sought to make in FASS.

75. Moreover, upon information and belief, Flanagan knew that as a lobbyist he was not permitted under Massachusetts law to engage in both lobbying and fundraising at the same time because such acts are considered an impermissible conflict of interest and a direct violation of Massachusetts law governing the conduct of lobbyists, as well as the Ethics Rules and Regulations defining the conduct of lobbyists in the Commonwealth of Massachusetts.

76. Thus, Flanagan interfered in the contractual relationship between Brandon and FASS for his own personal benefit: Flanagan caused Brandon to not fully perform under its contractual obligations to FASS for the purpose of gaining an equitable interest in FASS, and in order to maximize that interest by preventing any additional business growth by FASS until he acquired the interest he sought.

77.  Flanagan did, in fact, engage in fundraising on behalf of FASS by representing to FASS that investment capital could be raised in a relatively short period of time, by introducing FASS to an individual who worked to prepare FASS for its presentation to potential investors, by arranging FASS to meet an individual who he represented to FASS was a potential key investor, and by arranging meetings between FASS and this potential key investor at Flanagan's Boston offices.

78.  Shortly after Flanagan commenced his fundraising activities, he took the next step and attempted to persuade FASS to allow him to invest in FASS and to acquire an equity position in FASS.

79.  By this time, leery of Flanagan's true intentions and concerned about Brandon's failure to fully perform under the parties' agreements, FASS rejected Flanagan's efforts to obtain a substantial piece of FASS' stock interests and equity ownership.

80.  Upset by FASS' refusal, Flanagan threatened FASS, and attempted to victimize FASS, by alleging that unless FASS turned over a substantial portion of its equity and ownership, he would take action that would raise doubts with government procurement officials and would impair and impede FASS' eligibility to bid on future contracts, and would impair present contracts that FASS was and is a party to.

81.  More specifically, Flanagan threaten to interfere in FASS' developing business relationship with the Massachusetts Department of Public Health at a critical time by telling the Commonwealth that FASS did not have the financial resources to meet its obligations to the Commonwealth under their agreement.

82.   Upon information and belief, Flanagan eventually carried out this threat and did, in fact, interfere in FASS' business relationship with the Commonwealth by informing the Commonwealth that FASS was not sufficiently solvent to meet its obligations to the Commonwealth.

83.   As a result of this interference, FASS' business relationship with the Commonwealth was significantly impaired and FASS suffered a loss of revenue: In or around late summer or early fall of 2004, when the business relationship between the Commonwealth and FASS was expected to progress and move forward, the Commonwealth instead threaten to terminate the relationship because of concerns it allegedly had about FASS; concerns that FASS believes came from Flanagan as described above.

84.   FASS' relationship with the Commonwealth was only recently renewed – after months of unexplained delay – shortly after FASS filed its original counterclaim against Brandon which, *inter alia*, sought to hold Brandon accountable for interfering in FASS advantageous business relations with the Commonwealth.

## COUNT I
### Breach of Contract Against Brandon

85.   FASS repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though eighty-four (84), both inclusive as if fully set forth herein.

86.   Brandon breached the Agreements entered into by and between Brandon and FASS by failing and refusing to fully comply with the Agreements entered into by and between them.

87.   That as a result of, and as a consequence of, Brandon's breach of contract, FASS has been required to expend large sums of monies; FASS has been required to

engage in remedial activity to correct the breaches occasioned by the Brandon; and, as a direct result of the breaches of contract committed by Brandon, and by Flanagan, FASS has been caused to suffer and sustain injury and damages.

**COUNT II**
**Breach of Contract Against Brandon:  Confidentially**

88.   FASS repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though eighty-seven (87), both inclusive as if fully set forth herein.

89.   That the documents that were submitted by FASS to Brandon, in connection with the contractual obligations then and there existing by and between FASS to Brandon, were and remain confidential.

90.   That Brandon agreed that all documentation, memoranda, negotiations, and properties placed in its hands, by FASS, would remain confidential and would not be disclosed or disseminated to any third parties without prior written approval and permission given by FASS to Brandon.

91.   That Brandon has breached the confidentiality provisions of the Agreements entered into by and between Brandon and FASS by violating the confidentiality provisions in their Agreements, and by violating the confidentiality provisions that are included as a portion of the documents that were improperly disclosed and disseminated by Brandon (including the attachment of said confidential documents to Brandon's previous filings in this litigation).

92.   That as a result of the breach of the confidentiality provisions of their Agreements, and as a result of the breach of the confidential nature of the documents and materials placed in the hands of Brandon by FASS, FASS has

suffered immediate and irreparable injury and damages, such that it is entitled to injunctive relief and an award of damages.

## COUNT III
## Intentional Interference With A Business Relationship Against Brandon

93.     FASS repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though ninety-two (92), both inclusive as if fully set forth herein.

94.     That during the term of the Agreements that were in existence by and between the parties herein, Brandon knew of the business relationships that existed by, between, and among FASS, its customers, the Commonwealth of Massachusetts, and the General Services Administration.

95.     In addition to the foregoing, Brandon knew of the business relationships existing by, between, and among FASS, its officers, directors, shareholders, and others.

96.     That Brandon, as a result of its wrongful conduct committed against FASS and as a result of its improper and willful conduct and breach of its Agreements with FASS, Brandon has intentionally interfered with the business relations that then existed and continue to exist by, between, and among FASS, its customers, the Commonwealth of Massachusetts, the General Services Administration of the United States of America, and the officers, directors, and shareholders of FASS.

97.     That as a result of the foregoing, solely as a result of Brandon's wrongful conduct, FASS has been caused to suffer damages.

## COUNT IV
## Breach of Good Faith Against Brandon

98.     FASS repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though ninety-seven (97), both inclusive as if fully set forth herein.

18

99.    That by entering into the Agreements as above-referenced, and entering into the confidentiality provisions, which are necessarily a part of the Agreements entered into by and between Brandon and FASS, Brandon had, and continues to have, a duty of good faith that is owed by it to FASS.

100.    That the above-referenced conduct of Brandon constitutes a breach of the duty of good faith.

101.    That solely as a result of Brandon's wrongful breach of its obligations to FASS herein, FASS has been caused to suffer immediate, irreparable injuries and damages.

102.    That as a result of the foregoing, FASS demands that injunctive relief be granted to it, together with damages and punitive damages.

### COUNT V
### Unjust Enrichment Against Brandon

103.    FASS repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though one hundred and two (102), both inclusive as if fully set forth herein.

104.    That despite the breaches of contract, and breach of confidentiality, and breach of good faith committed by Brandon as against FASS, FASS made payments to Brandon in sums exceeding Ninety-Five Thousand Dollars ($95,000.00).

105.    That Brandon has been unjustly enriched with respect to the Ninety-Five Thousand Dollars ($95,000.00) FASS has paid to it.

106.    That as a result of the foregoing, FASS demands Judgment against Brandon in the sum of Ninety-Five Thousand Dollars ($95,000.00) representing unjust enrichment as a result of the Brandon's breaches as above referenced.

## COUNT VI
## Fraud Against Brandon

107. FASS repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though one hundred and six (106), both inclusive as if fully set forth herein.

108. The representations and warranties made by Brandon to FASS as set forth herein were false and fraudulent, and made knowingly or intentionally to deceive FASS into engaging in business with Brandon.

109. In addition to the foregoing, Brandon's conduct, as set forth herein was conduct that constitutes fraud, misrepresentation, and deceit.

110. FASS justifiably relied on Brandon's deceitful conduct and misrepresentations, and as a result of the fraud, misrepresentation, deceit, and the attempts to convert the assets, stock, and equity of FASS, FASS has been injured and damaged.

111. Brandon's conduct was willful and wonton.

112. That solely as a result of the fraud committed by Brandon against FASS, FASS has been injured and damaged, and further demands punitive damages be awarded against Brandon.

## COUNT VII
## Violation of Unfair or Deceptive Acts or Practices Act,
## Chapter 93A of Massachusetts General Laws,
## Against Brandon & Flanagan

113. FASS repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though one hundred and twelve (112), both inclusive as if fully set forth herein.

114.    At all times relevant hereto, Brandon and Flanagan were engaged in trade or commerce within the meaning of Chapter 93A of the Massachusetts General Laws.

115.    The conduct of Brandon and Flanagan set forth above constituted unfair and deceptive acts and practices prohibited by Chapter 93A, and were further knowing and willful acts and practices prohibited by Chapter 93A.

116.    These unfair and deceptive acts and practices occurred primarily and substantially within the Commonwealth of Massachusetts as required by M.G.L. c. 93A, §11 and construed by the Massachusetts courts.

117.    As a result of Brandon's unfair and deceptive acts and practices, FASS suffered monetary damages entitling it to damages and attorneys fees under Chapter 93A. FASS is further entitled to up to three times but not less than two times the amount of its damages, plus attorneys' fees, for the knowing and willful acts and practices of Brandon.

**COUNT VIII**
**Intentional Interference With A Contractual Relationship Against Flanagan**

118.    FASS repeats, reiterates, realleges, and incorporates by reference paragraphs one (1) though one hundred and seventeen (117), both inclusive as if fully set forth herein.

119.    That during the term of the Agreements that were in existence by and between the Brandon and FASS, Flanagan knew of the Agreements and business relationships that existed by, between, and among FASS and Brandon, as well as the business relationships that existed by, between, and among FASS, its customers, including the Commonwealth of Massachusetts.

21

120.    As a result of his wrongful conduct committed against FASS, Flanagan has intentionally interfered with the business and/or contractual relations that then existed and continue to exist by, between, and among FASS and Brandon, and FASS and its customers, including the Commonwealth of Massachusetts.

121.    That as a result of the foregoing, solely as a result of Flanagan's wrongful conduct, FASS has been caused to suffer damages.

**WHEREFORE,** FASS demands Judgment against Brandon and Flanagan as follows:

a.    Dismissing the Brandon's Complaint in its entirety;

b.    Granting to FASS all of the relief requested by it in its Causes of Action and Counterclaims in the form of both compensatory damages and, where requested punitive damages;

c.    That an award of attorneys' fees be granted to FASS against Brandon and Flanagan in an amount within the jurisdictional limits of this Court;

d.    That the Court grant such other and further relief as may be just and proper in the premises, together with the costs of these proceedings.

## TRIAL BY JURY

FASS demands a Trial by Jury of all issues of fact in connection with FASS'

Counterclaims, its claims against Flanagan, and its defenses against Brandon herein.

DEFENDANT,
*Failsafe Air Safety Systems Corp*.
By its attorneys,

***s/Laurie M. Ruskin***

_____
Laurie M. Ruskin, *Of Counsel*, BBO# 630374
SWEDER & ROSS LLP
21 Custom House Street, Suite 300
Boston, MA 02110
(617) 646-4466

Dated:  March 31, 2005

CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served
upon the attorney of record for each of the other parties in this action
by U.S. mail (and e-mail) this 31st day of March, 2005.

***s/Laurie M. Ruskin***

_____
Laurie M. Ruskin