**United States District Court**
**District of Massachusetts**

```
                                )
BRANDON ASSOCIATES, LLC,        )
                                )
        Plaintiffs,             )
                                )    Civil Action No.
        v.                      )    04-12013-NMG
                                )
FAILSAFE AIR SAFETY SYSTEMS     )
CORP.,                          )
                                )
        Defendant.              )
                                )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In the instant contractual dispute, Brandon Associates, LLC
("Brandon") and FailSafe Air Safety Systems Corp. ("FailSafe")
assert a number of claims and counterclaims against one another
arising from a soured business relationship. FailSafe now moves
for leave to amend the counterclaim and to join a third-party
defendant. Dismissed party, Blue Sage Consulting, Inc. ("Blue
Sage"), moves for attorneys' fees.

## I.   Factual Background

According to the complaint, FailSafe is "a leading innovator
of mobile airborne hazard control technology". Brandon is a
company which provides lobbying services. On May 1, 2003,
FailSafe and Brandon entered into a contract whereby Brandon
agreed to provide FailSafe with government lobbying services in

-1-

order to generate contractual opportunities with state and federal agencies in exchange for $18,500 per month for six months.

On November 1, 2003, Brandon and FailSafe entered into a second agreement whereby Brandon agreed to continue to provide lobbying services and FailSafe agreed to pay $18,000 per month until termination by either party. In addition, FailSafe agreed to pay $10,000 per month toward an outstanding balance owed to Brandon. It is unclear whether that outstanding balance related to the first agreement.

The parties tell sharply conflicting stories about their contractual relationship. Brandon alleges that it fully performed its contractual obligations and that, as a result of its lobbying efforts, FailSafe secured a lucrative contract with the Massachusetts Department of Health ("the DOH"). Brandon states that it is owed $147,941 in outstanding fees.

FailSafe, on the other hand, alleges that it was misled by Brandon and its CEO, Donald Flanagan ("Flanagan") about Brandon's lobbying prowess. FailSafe alleges that Brandon wholly failed to provide strategic advice or to facilitate meetings with politicians. In total, FailSafe paid $95,000 for services which it alleges were inadequately or never rendered.

FailSafe further alleges that, from the Spring of 2004 onward, Flanagan intentionally interfered with the contractual

-2-

relationship between the two companies in order to obtain an equity interest in FailSafe. To effectuate that supposed plot, Flanagan persuaded FailSafe to enter into a business relationship with Boston Strategies, Inc. ("Boston Strategies"), Flanagan's consulting firm, to assist FailSafe in raising capital.

Although FailSafe's contention is difficult to decipher, it appears that, once Boston Strategies entered the picture, Flanagan "curtailed" his lobbying activities (in his role at Brandon) and turned his attention to fund-raising for FailSafe (in his role at Boston Strategies). FailSafe ascribes a sinister motive to the change, alleging that Flanagan chose not to lobby because he planned to acquire an equity interest in FailSafe before securing lucrative government contracts for it which would have increased the company's value.

The alleged scheme culminated with Flanagan "attempt[ing] to persuade [FailSafe] to allow him to invest ... and to acquire an equity position". FailSafe declined the offer and, in response, Flanagan allegedly began to make threats against the company. In particular, FailSafe alleges that Flanagan 1) threatened to "interfere in [FailSafe's] developing business relationship with the Massachusetts Department of Public Health" and 2) subsequently carried out that threat by informing the Commonwealth that FailSafe was "not sufficiently solvent" to fulfill its contractual obligations to the DOH. The Commonwealth

-3-

threatened to terminate the agreement but eventually chose not to do so.

On or about September 8, 2004, Brandon filed an action against FailSafe in the Massachusetts Superior Court for Suffolk County, stating claims for beach of contract, libel, to reach and apply and violation of M.G.L. c. 93A. The claim of libel arose from alleged misrepresentations that FailSafe made to third parties to the effect that Flanagan was a member of management at FailSafe. FailSafe removed the case to this Court based upon diversity jurisdiction.

On September 24, 2004, Brandon filed an amended complaint adding counts for fraud, misrepresentation and violation of M.G.L. c. 214 § 3A (prohibiting unauthorized use of names and likenesses). Brandon also added Blue Sage and several individuals as defendants because they owned percentages of FailSafe and because Blue Sage had allegedly introduced Brandon and FailSafe to one another.

On September 30, 2004, FailSafe answered and counterclaimed for breach of contract (two counts), intentional interference with a business relationship, breach of the implied covenant of good faith, unjust enrichment and fraud. On November 29, 2004, Blue Sage moved to dismiss on the ground that its inclusion as a defendant had destroyed diversity jurisdiction (Brandon and Blue Sage both maintain their principal places of business in

-4-

Massachusetts).  In response, on December 3, 2004, Brandon filed
a second amended complaint limiting its claims to: breach of
contract, violation of M.G.L. c. 93A and reach and apply against
only FailSafe.  FailSafe answered and reasserted its
counterclaims.

On December 23, 2004, Blue Sage filed a motion for
attorneys' fees and costs, contending that there had been no
reasonable basis for its inclusion in the instant suit and
speculating that it had been impleaded by Brandon solely to
destroy diversity jurisdiction.  Blue Sage states that it has
incurred $5,737 in costs and fees but does not detail the nature
of the work done by counsel.  Brandon opposes the motion, arguing
that it had legitimate grounds upon which to add Blue Sage.

On March 31, 2005, FailSafe filed a motion for leave to
amend its counterclaim by adding Flanagan as a third-party
defendant and asserting a claim for intentional interference with
contractual relations against him.  FailSafe also seeks to add
counts for violation of M.G.L. c. 93A against Brandon and
Flanagan.  Brandon opposes the motion.

## II.  **Blue Sage's Motion for Costs and Attorneys' Fees**

Blue Sage moves for an award of costs and attorneys' fees
pursuant to M.G.L. 231 § 6F, which provides that such fees and
costs may be awarded to a party if "substantially all of the

claims ... made by any [opposing] party ... were wholly insubstantial, frivolous and not advanced in good faith". What Blue Sage overlooks, however, is that § 6F is applicable only to cases brought in state courts and does not permit such awards by federal district courts. Monahan Corp. N.V. v. Whitty, 319 F.Supp.2d 227, 231-32 (D.Mass. 2004). Thus, Blue Sage has offered no viable legal basis for an award of costs and fees.

Moreover, Blue Sage's motion is factually deficient because it does not state the number of hours billed or services provided by counsel. Such information is particularly important here because $5,737 in fees and costs is suspect in light of the rather simple and dispositive legal issue involved. The amended complaint made it immediately clear that diversity of citizenship was lacking because it alleged that Brandon and Blue Sage are both Massachusetts corporations. Little legal research or expenditure of time was required to make that determination. See Fed.R.Civ.P. 12(h)(3) (mandating dismissal if subject matter jurisdiction is lacking). Accordingly, Blue Sage's motion will be denied.

### III. FailSafe's Motion for Leave to Amend Counterclaims

FailSafe moves for leave to amend the complaint to add Flanagan as a third-party defendant, to assert a claim for intentional interference with contractual relations against him

-6-

and to assert claims for violation of M.G.L. c. 93A against
Brandon and Flanagan. Brandon responds that the proposed claims
would be subject to dismissal for failure to state a claim and
intimates that the filing of the instant motion was motivated
solely to obtain negotiating leverage.

Pursuant to Fed.R.Civ.P. 15, leave to amend "shall be freely
given when justice so requires". Resolution Trust Corp. v. Gold,
30 F.3d 251, 253 (1st Cir. 1994)(stating that leave to amend
should be granted "unless it would be futile, or reward, inter
alia, undue or intended delay"). However, "a court has the
discretion to deny [leave to amend] if it believes that, as a
matter of law, amendment would be futile"." Carlo v. Reed Rolled
Thread Die Co. 49 F.3d 790, 792 (1st Cir. 1995).

The elements of a claim for intentional interference with
contractual or business relations are:

> (1) the existence of a contract or a business relationship
> which contemplated economic benefit; (2) the defendant's
> knowledge of the contract or business relationship; (3) the
> defendant's intentional interference with the contract or
> business relationship for an improper purpose or by improper
> means; and (4) damages.

Bourque v. Cape Southport Associates, LLC, 800 N.E.2d 1077,
1082-83 (Mass.App.Ct. 2004). The first element is alleged here
because there was a contract between FailSafe and Brandon and
another between FailSafe and the DOH. Because Flanagan was aware
of the contracts, the second element is also alleged. The third
element is claimed because FailSafe alleges that Flanagan

-7-

intentionally caused Brandon to render inadequate lobbying services and caused the DOH to question FailSafe's financial status in an effort gain an equity position in FailSafe. Finally, the last element is alleged because FailSafe claims two forms of damages: 1) its relationship with the DOH suffered and 2) it paid for lobbying services which were insufficient or not provided. Accordingly, FailSafe will be granted leave to amend its counterclaim to add a claim for intentional interference with contractual relations.

Chapter 93A declares "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful. M.G.L. c. 93A § 2(a). To prevail, a claimant must prove that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the claimant suffered a loss of money or property as a result. Bowers v. Baystate Technologies, Inc., 101 F.Supp.2d 53, 54-55 (D.Mass. 2000)(quoting Alan Corp. v. International Surplus Lines Ins. Co., 823 F.Supp. 33, 43 (D.Mass.1993)). Conduct undertaken in a business context can be considered unfair or deceptive only if it reaches "a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Damon v. Sun Co., Inc., 87 F.3d 1467, 1483 (1st Cir. 1996) (quoting Levings v. Forbes & Wallace, Inc., 396 N.E.2d 149 (1979)). In so determining, courts consider whether the actions

-8-

fall "within at least the penumbra of some common-law, statutory or other established concept of unfairness", or are otherwise "immoral, unethical, oppressive or unscrupulous". PMP Assocs., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917-18 (1975).

Under that standard, FailSafe states colorable claims for violations of Chapter 93A. It alleges that Brandon and Flanagan intentionally "curtailed" lobbying services to FailSafe in anticipation of a bid by Flanagan to obtain an equity position in the company. After that bid was rejected, Flanagan allegedly sought to undermine FailSafe's relationship with the DOH by calling into question FailSafe's financial integrity. Reasonable minds can differ about whether such conduct would be considered "unfair", "immoral" or "unscrupulous" in the "rough and tumble" business world but, because there is room to differ, FailSafe is entitled to adjudicate its claims for violation of Chapter 93A.

Much of Brandon's memorandum is devoted to suggesting that FailSafe's motion is not based on the merits of the proposed claims but is a ploy to gain bargaining leverage. That contention is unpersuasive, however, because, to the extent that FailSafe can amend the counterclaim to state allegations with a reasonable basis in fact, its motivations for doing so are irrelevant and, to the extent it cannot, Brandon's recourse, if any, is under Fed.R.Civ.P. 11. Thus, FailSafe's motion for leave to amend will be allowed.

**ORDER**

In accordance with the foregoing Blue Sage's motion for

costs and attorneys' fees (Docket No. 38) is **DENIED** and

FailSafe's motion for leave to amend (Docket No. 45) is **ALLOWED.**

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated July 11 , 2005

-10-